Ray **MARSHALL**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**HILLS BROS.**, a corporation, Defendant.

No. C-76-1738-CBR.

United States District Court, N. D. California.

June 17, 1977.

---

Daniel W. Teehan, Regional Sol., Malcolm R. Trifon, Atty., U. S. Dept. of Labor, San Francisco, Cal., for plaintiff.

Pettit, Evers & Martin, Robert M. Cassel, Phyllis E. Andelin, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This is an action brought by the Secretary of Labor ("Secretary") to enjoin Hills Bros. Coffee, Inc. ("Hills Brothers"), from violating the Age Discrimination in Employment Act of 1967 ("Age Discrimination Act"), 29 U.S.C. §§ 621 *et seq.,* and the Fair Labor Standards Act of 1938, *as amended,* 29 U.S.C. §§ 201 *et seq.* Plaintiff alleges in his amended complaint that Hills Brothers, a corporation engaged in the processing and distribution of coffee, discharged "certain Management employees employed at its * * * facilities in San Francisco, California and Edgewater, New Jersey because such individuals were between the age of 40 and 65." Plaintiff also alleges that Hills Brothers has violated the Fair Labor Standards Act by failing to pay minimum wages and overtime pay to the discharged employees. The latter claim is predicated on a finding that the employees were wrongfully discharged in violation of the Age Discrimination Act. Defendant has moved to dismiss or, in the alternative, for summary judgment.

Plaintiff does not specify in his complaint which employees were allegedly discriminated against. Section 7(b) of the Age Discrimination Act, however, provides that the Secretary may institute a court action only after attempting "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). Plaintiff and defendant agree that the conciliation efforts contemplated in § 7(b) were conducted with respect to only nine Hills

Brothers employees. As a result, this action must be limited to those nine individuals. The employees who are the subjects of this suit, therefore, and their respective dates of termination are John G. McChesney—February 28, 1973; Charles F. Loeffler—April 27, 1973; Joseph M. Ennis—April 27, 1973; Richard A. Schwarting—May 31, 1973; Allen T. Vadnais—August 17, 1973; Joseph J. LaCorte—April 30, 1974; Stanley T. Hamilton—June 11, 1974; John A. Nyire—June 14, 1974; and Donald D. Morton—September 1, 1974.

## I. STATUTE OF LIMITATIONS

■ The statute of limitations for bringing an action under the Age Discrimination Act allows, at most, three years to pass after the alleged act of discrimination. 29 U.S.C. § 626(e) (incorporating by reference 29 U.S.C. § 255(a)). This action was filed on August 17, 1976. As the result, the terminations of McChesney, Loeffler, Ennis, and Schwarting may not be challenged in this suit. Plaintiff appears to agree, conceding that these claims are "moot." They are not moot; they are barred by the statute of limitations and will be dismissed accordingly.

Section 7 of the Age Discrimination Act, 29 U.S.C. § 626(e), incorporates the statute of limitations section (§ 6) of the Portal to Portal Pay Act, 29 U.S.C. § 255. When it was enacted in 1947, § 6 allowed individuals two years in which to bring an action for unpaid minimum wages or overtime compensation or for liquidated damages under the Fair Labor Standards Act. The section was amended in 1966 to extend the time period to three years for "a cause of action arising out of a willful violation." If defendant committed willful violations in this case, the statute of limitations will not bar the claims of Vadnais, LaCorte, Hamilton,

Morton and Nyire.[1] If the alleged violations were not willful, only Morton's claims may be pursued.

Plaintiff and defendant disagree as to what is the proper standard for willfulness. Plaintiff contends that an employer willfully violates the Age Discrimination Act if it "had knowledge of the Act or knew that the Act 'was in the picture.'" Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motions to Dismiss and/or for Summary Judgment 5 (filed December 22, 1976). See Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5 Cir. 1971), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); Brennan v. Heard, 491 F.2d 1, 3 (5 Cir. 1974). Defendant, on the other hand, insists that willful violations are "intentional, knowing or voluntary as distinguished from accidental, and * * * conduct marked by careless disregard whether or not one has the right to so act." Hodgson v. Hyatt, 318 F.Supp. 390, 392–393 (N.D.Fla.1970).

■ The Court will not reach the question of exactly what conduct constitutes a willful violation, however, because the issue is not appropriate for summary judgment. Defendant, the moving party, has the burden of convincing the Court that there is no genuine issue of material fact as to whether Hills Brothers willfully violated the Age Discrimination Act. See Cameron v. Vancouver Plywood Corp., 266 F.2d 535, 539–540 (9 Cir. 1959). Assuming that there is a difference in standards and that the more stringent willfulness standard is applied, defendant still has not convinced the Court that Hills Brothers did not have actual knowledge of the statute.

1. Vadnais was Assistant to the General Sales Manager; his function was primarily public relations and social activities such as attendance at industry meetings and conventions. LaCorte held the position of personnel clerk at Edgewater; his primary duty was that of timekeeper. Hamilton was manager of special sales, responsible for institutional, export, and government sales. Morton was General Manager of Hills Brothers' largest production facility located at Edgewater, New Jersey, and was responsible for all operations at that facility. Nyire was Morton's assistant at Edgewater and was responsible for line management and union relations.

## II. EVIDENCE OF AGE DISCRIMINATION

■ In order to prevail in this action, the Secretary has the burden of proving that the five employees in question were dismissed because of their age. Plaintiff has presented no evidence that this was the case. Indeed, with the exception of the bare conclusory allegations contained in his complaint, plaintiff has not even alleged any specific facts to support a finding of age discrimination.

Plaintiff argues that he has established a prima facie case of age discrimination by "(1) the evidence that eleven supervisory employees were involuntarily terminated and that nine were in the protected age group and eight of these nine were replaced by younger individuals; (2) the evidence that when there was a choice between which of two or more employees to terminate, Hills chose the oldest (LaCorte, Schwarting, Loeffler); (3) the evidence of pretext in Hamilton's termination and the reference to age mentioned to one of his subordinates by company officials prior to his termination; and (4) the evidence of a prima facie case of age discrimination considering LaCorte's case on an individual basis." Plaintiff's Post-Hearing Memorandum in Opposition to Defendant's Motion for Summary Judgment 2 (filed April 29, 1977). While such evidence may establish a prima facie case of age discrimination under some circumstances, it fails to do so in this case.

In order to view the five terminations at issue in context, it is necessary to understand the business position of Hills Brothers during the relevant time period. During 1973 and 1974, Hills Brothers was in the midst of an economic crisis of the greatest magnitude. Beginning in 1969, Hills Brothers' sales and market percentage dropped sharply each year, its marginal costs increased sharply each year, and its profits steadily declined from a $2.3 million profit in 1968 to an $8.4 million loss in 1974. Defendant has thoroughly documented the emergency measures that were taken in an attempt to restore the company to a profit-making status.

Hills Brothers took its first steps in November 1970 to trim overhead costs substantially and to freeze all new hiring in an attempt to reduce the work force through attrition. The company requested each employee to describe specifically his actual job functions, detailing each activity and the amount spent on it. Hills Brothers then used the job survey to evaluate each position and eliminate unnecessary functions. The following criteria were used in the evaluation:

(a) Were the duties involved in the position necessary to the function of that department?

(b) Could the department get along without the position entirely?

(c) Could the duties of the position be absorbed into another position and done by one person?

(d) Could the department itself be consolidated with other departments doing similar or related work?

Between 1971 and 1975, Hills Brothers reduced its work force by 17.9%, with 341 terminations throughout the company. Plant employment dropped from 255 persons in 1971 to 219 in 1975, primarily in the San Francisco plant. Forty-eight positions were eliminated in the nonexempt[2] and sales categories; 150 exempt employees terminated during that period and were replaced only when the position was crucial to operations.

---

2. Hills Brothers evidently does not classify its employees as management or non-management. It does, however, break them down in terms of exempt and non-exempt employees within the meaning of 29 U.S.C. § 213. Section 213 identifies a number of job categories that are exempt from the wage and hours requirements of 29 U.S.C. §§ 206 and 207, the most applicable to Hills Brothers being "any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman * * *." Thus, the number of exempt employees at Hills Brothers roughly parallels the number of employees in managerial positions such as the nine former employees with whom this action is concerned.

Other overhead costs were also severely cut. Hills Brothers approved pay raises only if absolutely justified by exceptional performance, eliminated recruiting, dropped its membership in several trade associations, cancelled subscriptions to trade publications, froze fringe benefits unless mandated by collective bargaining agreements, and carefully reexamined all departmental budgets.

Hills Brothers' officers concluded, however, that reduction of personnel and overhead costs alone would not reverse Hills Brothers' downhill slide and could not increase production and sales. Hills Brothers' steadily declining economic position, spiraling costs, and simultaneous loss of market share convinced them that there were severe inadequacies in the management of the company's operations, and that the lack of direction and failure to reverse losses effectively made the upgrading of management vital. In the opinion of the top management, Hills Brothers' losses in market share were attributable not only to external conditions but also to poor planning and inadequate management in sales and distribution. They felt that the overall poor performance at Edgewater and the failure to keep costs reasonably proportional pointed to poor administration at that facility and poor supervision from the San Francisco home office. The failure to evaluate adequately the performance of personnel, and the continued employment of marginal performers after their deficiencies had been noted, made an overall reorganization appear essential.

Thus, in addition to perceiving an overriding need to cut costs by reducing personnel and overhead costs, as well as reorganizing operations to eliminate unnecessary functions, Hills Brothers felt that it had to upgrade management as a whole. Implementation of those goals continued until Brazilian Products, Inc., acquired the company in June, 1976.

The perceived need to upgrade management resulted in an examination of the performance of certain key management personnel. Particular consideration was given to the failure to manage production facilities and control costs and the poor performance of sales and distribution departments.

Hills Brothers' officers felt that the annual written evaluations of the individual performance of each exempt employee were unsatisfactory for the purposes of this review, because the evaluations were often done by management personnel who themselves apparently were inadequate performers in terms of their ability to evaluate, supervise, and direct the performance of those under them. As a result, the following informal guidelines were uniformly applied to assess the performance of individuals:

(a) ability to perform present functions;

(b) ability to adjust to the necessary changes in the company's operation;

(c) effectiveness on the job, with particular focus on supervisory competence and past achievement in the context of Hills Brothers' present problems;

(d) versatility, with consideration whether the individual had the ability to move into another area of operations;

(e) uniqueness, considering whether the individual had some special skills which were necessary to a particular function;

(f) motivation and initiative;

(g) availability of replacements.

As the above discussion makes clear, the nine terminations which the Secretary investigated took place in the context of a massive internal reorganization of Hills Brothers. Literally hundreds of Hills Brothers' employees were terminated between 1971 and 1975. Hills Brothers terminated employees in all age groups and eliminated numerous positions, because top management officials felt doing so was necessary to reverse the company's faltering financial condition. Similarly, the company replaced managers who were believed to be unwilling or unable to make the necessary improvements in their area of responsibility. It is worth noting that in 1976, after all the terminations, position eliminations, and

reassignments had taken place, 58.68% of Hills Brothers' exempt employees were between the ages of 40 and 65, compared to 54.22% in 1971.

Plaintiff's allegations of age discrimination may be reduced to the following syllogism: (1) the nine employees investigated were in the protected age group; (2) they were terminated and eight of the nine were replaced by younger employees; (3) the employees were allegedly doing satisfactory work; and (4) therefore, the nine employees were terminated because of their age unless defendant can prove otherwise. Such a syllogism might be valid under some circumstances, see *Wilson v. Sealtest Foods Division of Kraftco Corp.,* 501 F.2d 84 (5 Cir. 1974), but it is unconvincing in the context of this case.

Congress intended the Age Discrimination Act to be interpreted and applied on a case-by-case basis:

"The case-by-case basis should serve as the underlying rule in the administration of the legislation. Too many different types of situations in employment occur for the strict application of general prohibitions and provisions." H.R.Rep.No.805, 90th Cong., 1st Sess. (1967), 1967 U.S. Code Cong. & Admin.News, pp. 2213, 2220.

As the Court of Appeals for the Eighth Circuit noted in *Moses v. Falstaff Brewing Corp.,* 550 F.2d 1113, 1114 (8 Cir. 1977), "the proof required for a prima facie case of [age] discrimination will vary depending upon the specific factual situation * *." Moreover, age discrimination is sufficiently different from race and sex discrimination that the lenient requirements for establishing a prima facie case under Title VII may not be applicable to suits brought under the Age Discrimination Act. *See Laugesen v. Anaconda Company,* 510 F.2d 307, 311–313 (6 Cir. 1975); Note, "The Age Discrimination in Employment Act of 1967," 80 *Harv. L.Rev.* 380, 388–399 (1976).

The circumstances of the instant case make plaintiff's syllogism inapplicable. Hills Brothers terminated the five individuals in question as part of a far-reaching program to regain financial stability. Plaintiff cannot expect the Court to look at 9 of 341 terminations and, without more evidence, conclude that these individuals were terminated because of their age. Under plaintiff's theory, every employer who terminates an employee who is between 40 and 65 years of age and replaces him with a younger employee must justify the termination or be held liable for age discrimination. Congress surely did not intend such a result.

At a January 13, 1977 hearing on defendant's motions, the Court gave plaintiff 90 days to discover specific facts which would support the conclusion that Hills Brothers had engaged in age discrimination. In three months, plaintiff was able to discover alleged evidence of actual discrimination only in the cases of LaCorte, Hamilton and Schwarting. *See* Plaintiff's Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment 2–14 (filed April 26, 1977). Thus, plaintiff admits that he could not discover any specific facts supporting a finding that Hills Brothers had discriminated against three of the five individuals with whom this action is concerned. Moreover, the alleged evidence of discrimination against LaCorte and Hamilton which plaintiff has produced is no evidence at all.

Plaintiff contends that the Court should conclude that LaCorte's termination was the result of age discrimination, because (1) other employees in the personnel department who are younger than LaCorte were not terminated, (2) LaCorte's duties eventually were assumed by a younger woman who was hired after his termination, and (3) LaCorte's superior allegedly contradicted himself as to whether LaCorte was involuntarily terminated. Along the same lines, plaintiff contends that he has established a prima facie case of discrimination against Hamilton by proving (1) that Hamilton is in the protected age group and was replaced by a younger person and (2) that, contrary to what his superiors swear in their affida-

vits, Hamilton was not incompetent, insubordinate, and inconsiderate of employees.[3]

In light of the undisputed facts concerning the financial status of Hills Brothers and the drastic reorganization of management and supervisory personnel during 1973 and 1974, the facts alleged by plaintiff do not even approach proving a prima facie case of age discrimination. Plaintiff's reasoning would result in assuming that almost every employer who replaces a person in the protected age group with a younger employee is guilty of discrimination until he proves the contrary. In light of the undisputed facts in this case, the Court can say as a matter of law that plaintiff has alleged no facts which would prove that Hills Brothers terminated Vadnais, LaCorte, Hamilton, Nyire, or Morton in violation of the Age Discrimination Act. In short, in the context of this case, even if defendant's reasons for terminating the five men in question were unreasonable, plaintiff must show something more to prove age discrimination.[4]

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

IT IS HEREBY FURTHER ORDERED that counsel for defendant shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiff as to form, and submit it to the Court for execution.

---

3. Plaintiff also sets forth alleged evidence of discrimination against Schwarting whose claim is concededly barred by the statute of limitations. As in the cases of LaCorte and Hamilton, however, plaintiff's evidence of discrimination against Schwarting consists of no more than the fact that Schwarting was in the protected age group, that he was terminated and replaced by a younger man, that he allegedly had been performing satisfactorily, and that the reasons for terminating him were "vague and subjective."

4. Although such a finding is not necessary to this holding, the Court is satisfied that the evidence shows Hills Brothers terminated the employees in question for what the company perceived to be legitimate business reasons and not because of their age.