**Richard R. OLSEN, Plaintiff,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, The United Transportation Union, and The Brotherhood of Locomotive Engineers, Defendants.**

**Rudell B. WILLEY, Plaintiff,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, The United Transportation Union, and The Brotherhood of Locomotive Engineers, Defendants.**

Nos. C–78–1717–WWS, C–78–2869–WWS.

United States District Court,
N. D. California.

Nov. 21, 1979.

Robert G. Werner, San Francisco, Cal., L. Kidd Larson, Ray, Quinney, Nebeker, Salt Lake City, Utah, for plaintiffs.

Robert S. Bogason, San Francisco, Cal., for defendant, Southern Pacific.

Barry Jellison, Davis, Cowell & Bowe, San Francisco, Cal., Harold Ross, Ross & Kraushaar, Cleveland, Ohio, Leo O'Connor, Inc., Sacramento, Cal., for defendant unions.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCHWARZER, District Judge.

Plaintiffs Rudell Willey and Richard Olsen each filed suit against Southern Pacific Transportation Company and their collective bargaining representatives[1] alleging that they were denied transfers to the position of fireman/engineer in 1976 and 1977 in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[2] The two cases were consolidated and came on for trial before the Court on October 9, 10, and 11, 1979.

## FACTS

In 1976, Southern Pacific decided to hire firemen/engineers in Ogden, Utah. In accordance with the company's established hiring procedures, the process began with interviews of applicants by the employment department. The district employment officer, Richard Triest, regularly stationed in Sacramento, travelled to Ogden to interview company employees for whom appointments had been made, based on their previously submitted applications for transfer. Those interviews took place on July 6, 1976. They were limited to persons who had submitted written applications by June 25, 1976. On July 7 and 8, 1976, he also interviewed outside applicants for the position for whom appointments had previously been made by the Utah State Employment Service.

According to company procedures, the district employment officer selects a number of applicants whom he finds to be qualified and refers their applications to the particular operating supervisor with hiring responsibility. At this time, Darrell Clow, the road foreman of engines, had delegated this responsibility to Earl Votaw, the terminal superintendent. Triest selected nineteen applicants from among those he had interviewed in July, and also in April 1976, and in the afternoon of July 9, turned over to Votaw the applications he had chosen with his recommendations. Votaw began to interview these applicants shortly thereafter. By Monday, July 12, Votaw had decided which ten of the applicants he

---

1. United Transportation Union and the Brotherhood of Locomotive Engineers were joined only for the purposes of effectuating prospective relief.

2. The act provides in relevant part:
   (a) It shall be unlawful for an employer—

   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

wanted to hire. His secretary began to set up appointments for their physical examinations that day.

Neither Willey nor Olsen had submitted applications to the employment department by June 25, 1976, the date set by Triest as his deadline. Sometime in June, Willey had expressed his interest in a transfer to his supervisor and, after being told that an application was necessary, submitted one which the company's employment department in Sacramento received on July 7. Olsen was given similar advice and his application was received on July 3.

Willey returned from a trip to Nevada on the morning of July 9. In response to his question whether he could be interviewed by Triest that day, Votaw told him that he could not because his application had been received after the cutoff date. Willey then called District Superintendent Simpson in Sacramento and asked him to help arrange an interview. Simpson called him back within an hour to advise that he could do nothing. Willey then telephoned the office of the company's chairman of the board in San Francisco and asked for help to arrange an interview for him and Olsen.

Around midday on July 9, both Votaw and Triest received telephone calls from the office of the chairman and from the district superintendent, directing that Willey and Olsen be interviewed by Triest. Contact was made with Willey who came into the office after lunch for an interview with Triest. Olsen could not be reached and was therefore not interviewed on July 9.

After Triest interviewed Willey on Friday afternoon, he referred his application to Votaw for consideration along with other qualified applicants. The recollections of what happened that afternoon between Votaw and Willey are not entirely consistent, but the principal events are substantially undisputed. First, it is clear that Votaw was irritated by the intervention of the chairman's office, instigated by Willey's call out of normal channels. Second, Votaw

was disturbed by Willey's apparent failure and refusal to file a required report on an earlier accident and upset at Willey's refusal to accept demerits voluntarily for this dereliction. The seriousness with which Votaw regarded Willey's refusal is corroborated by Votaw's institution of a formal investigation into this matter on July 12. Although the testimony varies in some respects, it is not disputed that Willey and Votaw had a heated discussion on the afternoon of the 9th about these matters and Willey's attitude toward the company, and that Votaw was angry and disturbed.

Willey contends that in the course of what he considered his interview with Votaw that afternoon, Votaw asked him:

"Why would you want to go back and start at the bottom of the seniority list at your age when you have almost 25 years with the company?"

After some discussion about future prospects for firemen/engineers, Willey claims that Votaw then said to him:

"Willey, you are 44 years old. You have only got 16 years left to work, and it costs the company a lot of money to train you in engine service."

Votaw denies that this is an accurate summary of what he said to Willey, but agrees that he raised the question whether Willey, with his length of service with the company, would want to give up the seniority he had accumulated by transferring to engine service. He does not deny that Willey's age or the length of his remaining work life may have come up in the conversation.[3]

Inasmuch as Olsen was unavailable on Friday, Triest returned to Ogden on July 12 or 13 and interviewed him that day. He then referred his application to Votaw. Olsen claims he was interviewed by Votaw within a day or two of the Triest interview. Votaw denies having interviewed Olsen, asserting that all of his hiring decisions and commitments had been made by July 12,

---

**3.** Although an agreement with the unions protecting a transferee's seniority was adopted in June 1976, none of the witnesses was aware of it at the time of the relevant discussions in July 1976.

before he ever received Olsen's application from Triest.

Regardless of how this factual dispute is resolved, it is undisputed that Votaw and Olsen had a conversation about Olsen's wish to transfer sometime around the period when Votaw hired the new firemen/engineers. Olsen claims that Votaw made comments similar to those made to Willey. Votaw's version is that he discussed the matter of giving up seniority and that age may have come up.

Early in 1977, the company again sought applicants for fireman/engineer positions. While Willey's application remained on file, he was off work at the time for disability. Under the company's procedures, persons laid off for disability are ineligible for transfers.

Olsen was among the applicants recommended for transfer by Triest in 1977 and had an interview with Darrell Clow, who was responsible for hiring. In the course of the interview, Olsen advised Clow of the filing of his notice of intent to sue for age discrimination and declined to answer certain questions. Clow's contemporary memorandum states that Olsen then terminated the interview, stating that he would get the transfer through his complaint and that answering questions might endanger his chances of success.

Neither Willey nor Olsen received transfers to engine service in 1976 or 1977.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

The act requires a prospective plaintiff to give the Secretary of Labor notice of intent to sue before filing an action. Under 29 U.S.C. § 626(d)(1), notice must be given within 180 days of the time when the unlawful practice occurred, except in states which have authority to grant relief against age discrimination where notice must be given within 300 days. 29 U.S.C. §§ 626(d)(2), 633(b).

■ Plaintiffs here gave notice to the Secretary on March 10, 1977, more than 180 but less than 300 days from the events in July 1976 when any claim would have arisen. Utah is a deferral state, but plaintiffs did not initiate proceedings under its laws until July 12, 1977, after the 180 day period had expired. Nevertheless, under the recent holding in *Bean v. Crocker National Bank*, 600 F.2d 754, 758–59 (9th Cir. 1979), plaintiffs are entitled to the benefit of the 300 day limitation period even though they did not institute state proceedings within 180 days. *Cf. Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (compliance with state time limitations is irrelevant for purposes of instituting state proceedings under 29 U.S.C. § 633(b), as long as proceedings are commenced before federal relief is sought). The notices were therefore timely given.

■ Willey filed this action on December 15, 1978, more than two years after the events of July 1976. An action under the act must be brought within two years after the cause of action accrues, unless the claim arises out of a "willful violation", in which case plaintiff has three years. (29 U.S.C. §§ 626(e), 255(a)) It has been held, with respect to the 180 day filing requirement, that the limitation period begins to run when "the employee knows, or as a reasonable person should know, that the employer has made a final decision" concerning his employment status. *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Inasmuch as the training program for the newly-selected firemen/engineers began in August 1976, Willey knew or should have known of his rejection well before December 1976. If, however, there is "substantial evidence . . . that the employer knew or suspected that his actions might violate the [act]" (*Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971) *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972)), the three year statute for a willful violation is applicable. *See, also, Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 461–62 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). For purposes of this

decision, the Court assumes that if defendant engaged in discriminatory acts, it did so with knowledge or with reason to know that it might violate the act.

■ Olsen's action was filed on July 31, 1978. His interview or interviews occurred mid-July 1976 and he was not notified of his rejection. Defendant has offered no substantial evidence to show that Olsen knew or should have known of his rejection on or before July 31, 1976. *See, Mumbower v. Callicott*, 526 F.2d 1183, 1187 n. 5 (8th Cir. 1975); *Hodgson v. Humphries*, 454 F.2d 1279, 1283–84 (10th Cir. 1972). His action, having been filed within the two-year period, is therefore timely as to all of his claims, regardless of the willfulness of defendant's acts.

## DISCUSSION

*Willey's Claims*

■ The elements of a prima facie case under the act are governed by the general principles of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must show in substance, that (1) he belonged to the protected class, *i. e.*, that he was at least 40 years of age (29 U.S.C. § 631(a)); (2) he applied and was qualified for the particular position; (3) he was not hired; and (4) the position was filled by a person less than 40 years old with equivalent qualifications.

■ The stipulated facts establish that Willey presented a prima facie case of age discrimination with respect to the 1976 hiring. He was 44 years old at the time; his application was in the hands of the decision maker and he was qualified for the position; and those who were hired in his stead had equivalent qualifications and were under 40.

■ Once plaintiff established a prima facie case, *i. e.*, evidence sufficient to support an inference of age discrimination, the burden shifted to the company to articulate some non-discriminatory reason for plaintiff's rejection. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–13 (1st Cir. 1979); *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). The company having produced such proof, plaintiff had the burden of proving by a preponderance of the evidence that the reason given was pretextual. *Id.* 600 F.2d at 1014–16; *Laugesen v. Anaconda Co.*, 510 F.2d 307, 311–13 (6th Cir. 1975). To sustain this burden plaintiff did not have to show that age was the sole ground for the decision not to transfer him. What he had to prove was that age was "a determining factor" in the decision, *i. e.*, that age made a difference in the sense that but for that factor, the company's decision would have been different. *Laugesen v. Anaconda Co., supra*, 510 F.2d at 317; *Loeb v. Textron, supra*, 600 F.2d 1019–20; *Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299, 1321 (E.D.Mich.1976).

■ The articulation of the controlling standard of proof has generated a certain amount of semantic confusion.[4] The issue before the Court, however, is clear enough. That issue is whether the employ-

---

4. Language in cases ranges from age having to be "one factor", *Kentroti v. Frontier Airlines, Inc.*, 585 F.2d 967, 974 (10th Cir. 1978); to having to be a factor which "made a difference in determining [the employer's action]", *Laugesen v. Anaconda Co., supra*, 510 F.2d at 317; having to be "a determining factor", *Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir. 1979); *Mastie v. Great Lakes Steel Corp., supra*, 424 F.Supp. at 1321; or having to be "the 'determining factor' . . . in the sense that, 'but for' . . . age" [the employer's action would have been different], *Loeb v. Textron, Inc., supra*, 600 F.2d at 1019.

See also the regulations of the Department of Labor, adopted on the basis of the legislative history, which state the purpose of the act to be that age "is not a determining factor in making any decision . . ." 29 C.F.R. § 860.103(c). *Mastie v. Great Lakes Steel Corp., supra*, 424 F.Supp. at 1321.

The Court doubts that there is any difference between a standard which requires plaintiff to prove that age was a determining factor in the decision and one which requires plaintiff to show that the decision would have been different, but for his age. But to the extent that the former standard provides a lower threshold for plaintiff's success, neither Willey nor Olsen have demonstrated that age was even a determining factor in defendant's decisions.

er's asserted reason was the true reason for its decision or a pretext. Thus a trier of fact could find that a plaintiff has sustained his burden of proof by producing evidence from which it could be inferred that the ostensible reason either was not the true basis for the employer's action or, standing alone, would not have resulted in that action. Such evidence would support the necessary finding that the employer's decision would have been different had it not been for plaintiff's age. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). It is not enough, however, to show that age entered into the consideration. The act does not make unlawful an employment decision based on grounds other than age "simply because [plaintiff's age] . . . makes the employer more certain of the correctness of its decision." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977).[5]

▮ Whether the employer's stated reasons are pretextual does not turn on whether the trier of fact approves of them. The issue is not whether the employer's decision was reasonable, but whether it was unlawfully motivated. *Loeb v. Textron, Inc., supra*, 600 F.2d at 1014. Evidence indicating the reasons to have been idiosyncratic or questionable may, however, be relevant to the issue of whether they are pretextual. *Id.* 600 F.2d at 1012 n. 6.

▮ Votaw testified that he did not transfer Willey to fireman/engineer in 1976 because of his attitude on July 9. He was angry and upset over Willey's call to the office of the company's chairman of the board to obtain special consideration and over his refusal to comply with the company's rules requiring submission of an accident report. The evidence leaves no doubt that Votaw and Willey had an acrimonious encounter on the day on which the transfer decisions were for the most part made.

Willey contends that Votaw's statements concerning his having only sixteen years of service left and the high cost of training engineers show that age was the true reason for his rejection. Even if the conflicts in the evidence concerning this conversation are resolved in Willey's favor, the making of those statements does not establish that Votaw's stated reason was pretextual.

There is no question that Votaw's anger and distress on July 9 were genuine. It is entirely credible that a managing employee in a large and structured corporation such as Southern Pacific would be upset if a subordinate sought the intervention of the chairman of the board to override established procedures. It is equally credible that he would be upset if at the same time the subordinate refused to comply with rules, the enforcement of which are that manager's responsibility.

That a decision to deny an otherwise highly qualified employee a transfer on the basis of pique or anger may be poor business judgment in no way diminishes the genuineness of Votaw's motivation. This conclusion is reinforced by the absence of any objective evidence indicating that Willey's age might have been considered significant. There is nothing to indicate that the company had a policy or practice not to transfer persons into engine service above a certain age. The age difference between the oldest applicant accepted (34 in 1976, 37 in 1977) and Willey's age (44 in 1976) was not substantial. Any incentive not to transfer Willey and Olsen because of the cost of training would have been diminished by the cost which the company incurred in retaining them as protected brakemen, a

---

5. In the analogous case of a failure to rehire under circumstances where the exercise of first amendment rights may have played a part in the employer's decision, the Court said:

"A rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy City School District Board of Education v. Doyle, supra*, 429 U.S. at 285, 97 S.Ct. at 575.

position in which they were guaranteed a certain amount of work.[6]

■ Finally, Votaw's alleged statements made in the course of the interview must be considered in context. It would be entirely natural and proper for Votaw to raise the seniority issue with Willey, for whom a transfer at the time would have resulted in the loss of some twenty years of seniority in train service. Votaw might reasonably wish to test Willey's sincerity by probing his desire to give up that seniority at that point in his career. The act should not be construed so as to expose an employer to the risk of liability for having failed to use a diplomat's circumlocution in putting relevant questions to job applicants.[7]

■ With respect to the 1977 hiring, Willey has failed to make a prima facie case. Although his application remained on file, under the policies and procedures of the company he was ineligible for consideration at the time, having been laid off for disability. Alternatively, if the company's eligibility rule is viewed as the reason for its decision not to transfer him, there is no evidence that its application to his case was pretextual.

*Olsen's Claims*

■ Whether Olsen made out a prima facie case in connection with the 1976 hiring depends on whether he can be considered as having applied. Because Olsen had not submitted his application before the June 25 deadline, and was not available on July 9 when Willey was given the special inter-

view and then recommended to Votaw, his application was not in Votaw's hands when Votaw made his hiring decisions. These facts, which are substantially undisputed, establish that Olsen, his application not having been fully processed due to late filing, was simply not an eligible candidate when the hiring decisions were made.

Plaintiff disputes that all of the hiring decisions had been made by July 12 or 13, when Triest interviewed Olsen and referred his application to Votaw. Although the record is not free from confusion, Votaw's testimony is supported by that of his secretary, that on July 12 she made appointments for physical examinations for all of the newly hired firemen/engineers. Votaw's testimony that he did not consider Olsen when he made the hiring decisions because Olsen's application was not before him must therefore be accepted.

Plaintiff contends, however, that inasmuch as Votaw knew on July 9 that Olsen had applied, his refusal to delay a decision until he had received the application was motivated by age discrimination. The fallacy of that contention is, of course, that the act does not require an employer to discriminate *in favor* of the protected class. As long as all applicants were treated the same, as they were here, Olsen has no basis for complaint.[8]

In any event, for the reasons discussed above, Votaw's statements allegedly made to Olsen relating to seniority and age, in the context in which they were made, afford no

---

6. Willey also makes certain other contentions. He claims to have told Votaw that he had mailed the required reports that morning, but Votaw's denial is supported by the fact that an investigation was started on July 12 and carried forward to a final decision. He claims that Votaw had made up his mind prior to July 9 to deny him a transfer but the evidence, which shows that while Votaw may have had some reservations about Willey's transfer, his relationship with Willey was good, does not support an inference of age discrimination. His other claims have been considered but are too insubstantial to warrant discussion.

7. The testimony of other persons interviewed by Votaw at the same time for fireman/engi-

neer shows that he used a devil's advocate style on occasion in job interviews.

8. Votaw's testimony suggests that his decision not to await receipt of Olsen's application before completing the hiring process may have been influenced by his resentment over Willey's call to San Francisco, in which he erroneously assumed Olsen to have had a part. He was also influenced by the assumption, which also turned out to be erroneous, that other late applicants were not being interviewed by Triest. But in the absence of any evidence of bad faith Votaw's errors do not support Olsen's claim of pretext.

basis for finding that the company's stated reason for not having transferred Olsen was pretextual.

 With respect to the 1977 hirings, Olsen contends that his rejection was in retaliation for his having filed a notice of intent to sue the company. The company's contemporary record shows, however, that Olsen was not considered because he terminated the interview with Clow, and Olsen himself admits that he declined to answer certain questions. Thus, the evidence is insufficient to sustain plaintiff's burden that retaliation was the immediate cause or a motivating factor of his rejection in 1977. *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975).

## CONCLUSION

For the reasons stated, the complaints must be dismissed and judgments entered for defendants.

IT IS SO ORDERED.