Charles E. VUKSTA

v.

BETHLEHEM STEEL CORP., Glenn C.
Wanick, Robert Wartman and
David A. Barker.

Civ. A. No. 82–0534.

United States District Court,
E. D. Pennsylvania.

June 10, 1982.

Charles E. Vuksta, pro se.

Dona S. Kahn, Philadelphia, Pa., for respondents.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In September 1958, plaintiff, a white Catholic male of Slavic origin, was hired by defendant, Bethlehem Steel Corporation[1] (Bethlehem) and, upon receipt of a degree in mechanical engineering, enrolled in its Loop Training Program. Nineteen years later, on September 30, 1977, plaintiff was told that his employment would soon be terminated as his job was being eliminated in a reduction of force. Plaintiff, proceeding *pro se* and contending that impermissible motives supply the real reason for his firing, brings suit pursuant to Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (Title VII), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, (ADEA), the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and adds a pendent state claim for malicious interfer-

---

1. Also named as defendants are the following individuals: Glenn C. Wanick, Robert Wartman and David A. Barker. Plaintiff's complaint identifies each of these individuals as white males holding management or supervisory positions with Bethlehem Steel Corporation.

ence with contractual rights. The suit seeks declaratory and injunctive relief in addition to compensatory and punitive damages. Defendant, captioning its response to plaintiff's hydra-headed complaint as a motion to dismiss, actually seeks summary judgment[2] on a number of claims and moves to dismiss others for lack of subject-matter jurisdiction.[3] Keeping in mind the liberal and generous pleading construction accorded to *pro se* plaintiffs, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Perkins v. Wagner*, 513 F.Supp. 904 (E.D.Pa.1981), we nevertheless grant the motion.

Summary disposition pursuant to Fed.R. Civ.P. 56 is appropriate since there are no genuine issues of material fact as to plaintiff's Title VII claim. On September 30, 1977, defendant informed plaintiff of its intention to eliminate his job and to release him from employment as of October 30, 1977.[4] Pursuant to defendant's termination policy, plaintiff elected to remain on defendant's list of employees until December 11, 1978.[5] This apparently permitted plaintiff to accrue sufficient seniority so as to insure his eligibility for pension benefits.[6] On November 4, 1977, plaintiff sent the Equal Employment Opportunity Commission (EEOC) a letter containing a chronology of events which purportedly amounted to illegal discrimination by defendant.[7] Responding approximately three weeks later, a representative of the EEOC specifically

informed plaintiff of his Title VII rights and suggested that he "further develop" the charge before sending it to the Philadelphia EEOC field office. He did not do so.

Eight months later, on August 1, 1978, a full 304 days after being notified of defendant's adverse employment decision, plaintiff complained to the Pennsylvania Human Relations Commission (PHRC). A representative thereof advised him, on August 31, 1978, that a formal, notarized charge was required before the PHRC could consider it.[8] In early January, 1979, plaintiff's charge with the PHRC was finally filed.

42 U.S.C. § 2000e–5(e) provides in relevant part that

a charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in the case of an unlawful employment practice with respect to which the person aggrieved has instituted proceedings with a State . . . agency . . . such charge shall be filed . . . within three hundred days after the unlawful practice occurred.

Where a party complains that an unlawful employment practice has occurred in a state which prohibits such conduct, charges with the EEOC must be deferred for sixty days after commencement of the State proceedings. 42 U.S.C. § 2000e–5(c). Pennsylva-

---

2. Motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) are properly treated as motions for summary judgment where "matters outside the pleading are presented." *See* Fed.R.Civ.P. 12(b). In the case at bar, defendant's motion relies, in part, upon thirteen separate exhibits and the affidavit of Richard Adams (Adams affidavit), Bethlehem's superintendent of Human Resources and Record Custodian. Plaintiff's opposition incorporates nine separate exhibits. Hence, sufficient notice has been given to the parties that the Court is considering a summary judgment motion. *See Bryson v. Brand Insulators, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).

3. Fed.R.Civ.P. 12(b)(1).

4. Adams Affidavit.

5. *Id. See also*, plaintiff's exhibit IX.

6. Adams Affidavit.

7. *See* plaintiff's complaint, exhibit 1A. The list of grievances which plaintiff suffered begins in September 1958. It contains no reference to any discrimination based upon race, national origin, age or religion. *Assuming* that the document is an EEOC "charge", we have grave doubts that it can form the predicate for this Title VII action. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (A valid judicial complaint must "reasonably be expected to grow out of the charge of discrimination" filed before the EEOC.) *See also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

8. *See* defendant's exhibit H.

nia is a "deferral" state and requires that charges of discrimination be filed within ninety days after such discrimination occurs. 43 Pa.Stat.Ann. § 959 (Purdon).[9]

■ Our determination of whether plaintiff filed a timely charge necessarily entails an effort to discover when the limitation period began to run. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) held that ... the filing limitations periods ... commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position did not occur until later. The Court of Appeals for the Ninth Circuit correctly held in a similar tenure case, that '[t]he proper focus is upon the time of the discriminatory acts, not upon the time in which the consequences of the acts became most painful'. (footnotes and citations omitted) (emphasis by the court).

Similarly, in the case at bar, the complained of decision occurred on September 30, 1977. The fact that plaintiff continued to work for one month thereafter and remained on defendant's list of employees until December 1978 does not stay the commencement of the limitation period.

As previously noted, plaintiff delayed until August 1, 1978, a full 304 days after he had been notified of his impending loss of employment, before attempting to file a charge with the PHRC. Five months later, in January 1979, plaintiff's charge was perfected. Assuming for present purposes the

validity of the August 1978 PHRC charge, plaintiff has missed the 180-day filing deadline. *See generally, Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

■ Untimely filing of a Title VII claim does not create a jurisdictional bar to the subsequent suit. *Zipes v. Trans World Airlines, Inc.*, —— U.S. ——, ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Hart v. J. T. Baker Chemical Corp.*, 598 F.2d 829, 832 (3d Cir. 1979). Rather, Title VII's time limitations are subject to equitable tolling which can occur where an "employer prevent[s] the employee from asserting his or her rights by actively concealing them or misleading the discharged employee as to the true reason for the discharge". *Id.* Determining the propriety of equitable tolling normally requires reference to a factual record. *Emrick v. Bethlehem Steel Corp.*, 539 F.Supp. 653, at 657 (E.D.Pa. May 26, 1982). Such a record exists here.

■ On October 25, 1977, less than a month after being notified of defendant's decision, plaintiff was informed by the Director of the EEOC's Office of Congressional Affairs that specific time limits would govern the filings of his charge.[10] Approximately one month later, on November 29, 1977, plaintiff was informed how to file a charge, was sent a form to allow him to properly do so and was told to whom to mail it. Moreover, plaintiff was specifically told that the "EEOC cannot assert Federal jurisdiction ... until the Pennsylvania Human Relations Commission has been al-

---

9. The ninety-day requirement of Pennsylvania law imposes a more demanding burden on potential plaintiffs than does the federal requirement of one hundred eighty days. However, plaintiff's "federal statutory rights [cannot] be foreclosed by ... failure to file within the significantly shorter state limitation period". *Stringer v. Commonwealth of Pennsylvania*, 446 F.Supp. 704, 706 (M.D.Pa. 1978). *See also, Oscar Mayer & Co. v. Evans*, 441 U.S. 705, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (ADEA); *Davis v. Calgon Corp.*, 627 F.2d 674, 675 (3d Cir. 1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981) (same holding under ADEA); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 194 (3d Cir. 1977), *cert. denied*,

439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (same).

10. *See* defendant's exhibit "A". The letter specifically advised plaintiff that the EEOC is

 authorized to accept, investigate and attempt to conciliate charges alleging ... discrimination, as long as these charges are filed with us within 180 days of the alleged discriminatory act, unless the act is of a continuing nature. This period can be extended to 300 days if the charge is filed within the time period allowed by a State with its own antidiscrimination law.

lowed at least 60 days to try to resolve the matter . . ." [11]

Notwithstanding these cooperative efforts by the EEOC, plaintiff failed to comply with their suggestions. *Cf. Mikkilineni v. United Engineers & Constructors*, 485 F.Supp. 1292, 1298 (E.D.Pa.1980) (Court refused to excuse exhaustion of remedies where plaintiff failed to file an administrative complaint even though the agency evidenced a willingness to aid plaintiff in the preparation thereof.) The facts are clear that shortly after defendant's decision to terminate him, plaintiff believed that his civil rights had been violated. Upon inquiry to the EEOC plaintiff was informed of his statutory rights and obligations. Moreover, EEOC representatives *aided* him and instructed him as to the scope of Title VII's prohibitions, sent him a charge form and informed him with whom he should file the charge. These unrebutted facts are inapposite to any theory of equitable tolling which generally requires, in the Title VII context, either employer concealment of rights or active misleading of the employee as to the true reason for the discharge. *See Hart v. J. T. Baker Chemical Corp.*, 598 F.2d at 832. In fact, no evidence has been adduced and plaintiff has not even alleged that defendant in any way attempted to conceal his rights from him. Hence, we grant defendant's motion for summary judgment on plaintiff's Title VII claims.

■ Defendant's motion regarding plaintiff's ADEA claims will likewise be granted. Assuming *arguendo* that plaintiff filed an appropriate administrative charge,[12] the ADEA, through 29 U.S.C. § 626(e)(1) incorporates the limitations period as contained in the Portal-to-Portal Act, 29 U.S.C. §§ 255, 259. Specifically, ADEA plaintiffs must institute suit "within two years after the cause of action accrued, except that a cause arising out of a willful violation may be commenced within three years". 29 U.S.C. § 255(a). Here, the discriminatory conduct occurred on September 30, 1977, suit was commenced almost four years and five months later, on February 5, 1982.[13] Suits for age discrimination which are brought beyond the time mandated by the statute of limitations are time-barred. Even assuming that a willful violation can be made out, the ADEA allows "at most, three years to pass after the alleged act of discrimination". *Marshall v. Hills Brothers*, 432 F.Supp. 1320, 1322 (N.D.Cal.1977). The desire to protect defendant from defending against stale claims requires that "every action shall be forever barred unless commenced within the limitations period". *Stout v. Amoco Production Co.*, 508 F.Supp. 30, 35 (D.Wyo.1980). A judge of this court colorfully expressing the requirement that ADEA suits must be brought in a timely fashion noted that the "Lord and Congress help those who help themselves". *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1335

---

11. *See* defendant's exhibit "B".

12. In early June, 1978, plaintiff sent materials to the Department of Labor complaining of age discrimination. *See* defendant's exhibit "C". The Department responded that the submitted information did not rise to the level of a "charge". Just over one month later, on July 25, 1978, plaintiff received a subsequent letter from the Department of Labor which notified him that he could pursue a private civil suit only after first notifying the PHRC. *See* defendant's exhibit "E". On September 7, 1978, the acting area director of the employment standards administration of the Department of Labor notified plaintiff that the Department was "unable to take further action" on plaintiff's behalf. *See* defendant's exhibit "K".

Plaintiff has 300 days after the date of the alleged discrimination to file with the federal authorities. *Davis v. Calgon Corp.*, 627 F.2d

674, 677 (3d Cir. 1980). This period is, moreover, subject to equitable tolling. *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192–93 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Hence, it appears that plaintiff properly exhausted his federal administrative requirements although he ignored the Department of Labor's suggestion that he file with State authorities.

13. 29 U.S.C. § 626(e)(2) tolls the time period within which suit must be brought during the time that the secretary attempts conciliation. Since plaintiff arguably filed an appropriate federal charge in early July 1978 and was informed on September 7, 1978, that conciliation efforts had failed, *see* n. 12, this time period—approximately 60 days—is excluded from our computation of the timeliness of plaintiff's suit.

(E.D.Pa.1976).[14] Hence, we will enter judgment for defendant on plaintiff's ADEA claims.

■ In order to state a claim under 42 U.S.C. § 1983, plaintiff need only allege that he has been deprived of a federal right by someone acting under the color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Action taken "under color of law" may be equated with the "state action" requirement of the Fourteenth Amendment, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Without any allegation of state action by plaintiff, suit under § 1983 will not lie.

■ Plaintiff need not name as a defendant the state official whose conduct is responsible for the deprivation which he suffers. Purely private parties who conspire with state officials are acting under color of law and are amenable to a § 1983 suit. *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S. H. Kress & Co., supra, Black v. Bayer*, 672 F.2d 309, 318 (3d Cir. 1982), *Arment v. Commonwealth National Bank*, 505 F.Supp. 911, 913 (E.D.Pa.1981). Likewise, performance of a public function, significant involvement of the state in private activity, or state enforcement of agreements affecting private parties may confer "state action" upon private parties. *See, Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Chalfant v. Wilmington Institute*, 574 F.2d 739 (3d Cir. 1978); *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168, 1176 (3d Cir. 1978).

■ In the case at bar, plaintiff seeks recovery pursuant to § 1983 even though he has failed to allege any state action. Re-sponding to the motion to dismiss, plaintiff argues only that the PHRC denied him due process of law and that this triggers § 1983 liability for defendant, Bethlehem. Even assuming the veracity of this assertion as to the PHRC, plaintiff has not indicated or asserted that defendant was in any way responsible for the due process deprivation which he allegedly suffered at the PHRC's hands. Hence, we grant defendant's motion to dismiss all claims predicated upon § 1983.

■ Claims asserted under § 1985 will likewise be dismissed. Ignoring plaintiff's failure to plead a violation thereof with the requisite factual specificity,[15] the only § 1985(3) claims which are raised, employment discrimination based upon religion and national origin, are properly the subject of a Title VII suit. Adjudication of such claims under § 1985(3) would violate the "detailed and specific provisions" of Title VII. *Great American Savings & Loan Ass'n. v. Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 2350–2351, 60 L.Ed.2d 957 (1979). Specifically, § 1985(3) "may not be invoked to redress violations of Title VII". *Id.* at 378, 99 S.Ct. at 2352. Accordingly, we will grant defendant's motion to dismiss all claims based upon § 1985(3).

■ 42 U.S.C. § 1981 states, in pertinent part, that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens ...

We previously noted that the standard of comparison " 'as enjoyed by white persons', speaks directly to race and does not concern disparity in treatment on the basis of religion, sex or national origin". *Boddorff v.*

---

14. Other courts which have barred suits as beyond the limitations period contained in 29 U.S.C. § 626(e)(1) are *Hovey v. Lutheran Medical Center*, 516 F.Supp. 554, 556–67 (E.D.N.Y. 1981); *Olsen v. Southern Pacific Transportation Co.*, 480 F.Supp. 773, 778–79 (N.D.Cal. 1979), *aff'd.*, 654 F.2d 733 (9th Cir. 1980).

15. Conclusory allegations of conspiracy are insufficient to invoke this Court's jurisdiction. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972).

*Publicker Industries, Inc.*, 488 F.Supp. 1107, 1109 (E.D.Pa.1980).[16] Accordingly, defendant's motion to dismiss the § 1981 claims will be granted.

 Moreover, we *sua sponte* dismiss the pendent claim against the individual defendants for their alleged interference with plaintiff's contractual rights with defendant, Bethlehem. In *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 167 A.2d 472 (1961) Pennsylvania adopted Section 766 of the Restatement of Torts. Subsequently, in *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), Pennsylvania adopted the tentative draft of Section 766 of the Restatement (Second). That section provides, in relevant part, that

> [o]ne who intentionally and improperly interferes with the performance of a contract ... between another and a third person ... is subject to liability ...

Antedating *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, by more than thirty years, *Ramondo v. Pure Oil Co.*, 159 Pa.Super. 217, 244, 48 A.2d 156 (1946) observed that a prerequisite to liability for interference with contractual rights requires a showing that defendant "interfere[d] in a contract between two parties".

In the case at bar, plaintiff's allegations are that the individual defendants acted as "an agent" for defendant, Bethlehem Steel. Since a corporation can only act through its agents and the individual defendants are identified as Bethlehem's agents, there is no third party against whom an action can lie. *See Raab v. Keystone Insurance Co.*, 271 Pa.Super. 185, 412 A.2d 638 (1980) (Suit for interference with contract rights against an insurance company's agent, a claim adjuster, is improper where adjuster acted as a corporate agent.)

One final point merits attention. Plaintiff correctly complains that defendant's motion bears the incorrect civil action number. Apparently as a result of a clerical error two numbers were transposed; the motion lists 82–5034 as the civil action number instead of 82–0534. Due to this error, plaintiff seeks judgment by default and argues that this single typographical error, which apparently slipped past the proofreading stage, somehow evidences bad faith on defense counsel's part. Mere articulation of this proposition is sufficient to warrant its rejection, particularly where neither the Court nor the Clerk's office was misled by the error and plaintiff has suffered no prejudice thereby.

Finally, for the reasons set forth in this memorandum, plaintiff's claims against the individual defendants will also be dismissed.

### ORDER

AND NOW, this 10th day of June, 1982, treating defendants' motion to dismiss as one for summary judgment, IT IS ORDERED that said motion is GRANTED and judgment is entered in favor of defendants and against plaintiff on all claims arising out of 42 U.S.C. § 2000e et seq. (Title VII) and the Age Discrimination in Employment Act; 29 U.S.C. § 621 et seq. IT IS FURTHER ORDERED that plaintiff's claims predicated upon 42 U.S.C. §§ 1981, 1983, 1985 and state law interference with contractual relations are DISMISSED.

IT IS FURTHER ORDERED that plaintiff's motion for default is DENIED.

---

**16.** *See also Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1977).