**Thor C. LAUGESEN, Plaintiff-Appellant,**

v.

**The ANACONDA COMPANY, Defendant-Appellee.**

No. 73–2205.

United States Court of Appeals, Sixth Circuit.

Jan. 10, 1975.

* Honorable Martin D. Van Oosterhout, Senior Circuit Judge, Eighth Circuit, sitting by designation.

Donald H. Vish, James E. Milliman, Louisville, Ky., for plaintiff-appellant.

John E. Tarrant, Bert T. Combs, Martin V. Roach, Charles R. Simons, Louisville, Ky., for defendant-appellee.

Before PHILLIPS, Chief Judge, and McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

On October 29, 1971 plaintiff-appellant Thor C. Laugesen was permanently discharged from employment with defendant-appellee Anaconda Company. Fifty-six years old at the time of his discharge, Laugesen had worked for Anaconda since 1958 and for its predecessor in Louisville since 1954. Laugesen brought suit against Anaconda in the district court claiming that he was unlawfully discharged because of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634.

Laugesen appeals from a judgment rendered upon a jury verdict in favor of Anaconda, raising important questions concerning the extent to which the guidelines set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable in a single plaintiff age discrimination case tried to a jury, and equally important, the nature of instructions appropriate in such a case.

We reverse and remand, not because of the McDonnell Douglas contentions, but because the jury instructions taken as a whole failed to make it clear that even if more than one factor affected the decision to discharge Mr. Laugesen, he could nevertheless recover if one factor was his age and it in fact made a difference in determining whether he was to be retained or discharged.

At the time Laugesen was selected for a permanent lay-off and declared ineligible for rehire by defendant Anaconda, he was a purchasing manager whose principal duties were to oversee the purchase of materials used by Anaconda's Louisville, Kentucky plant to produce aluminum foil and containers. Laugesen's duties also included purchasing materials for another plant in Fairlawn, New Jersey, which engaged in similar work and was under the general jurisdiction of the Louisville plant. Laugesen had been previously employed by Cochrane Foil Company in Louisville on April 19, 1954

and remained on when that company was acquired by Anaconda in 1958.

The evidence is undisputed that in 1969 and 1970, Anaconda experienced its share of industry-wide economic difficulties which were reflected adversely in its profit and loss picture. Determining that drastic steps to reduce its work force and achieve other economies would be required, it decided in early 1971 to shut down the Fairlawn plant and also to reduce substantially both the hourly rated and salaried personnel in Louisville. The general retrenchment commenced with a re-examination of all of the functions and staff of the company, particularly its older operations. At the same time Anaconda set about to build new plants and engage in other activities which gave promise of more balanced and profitable operations in the future.

Victor B. Torasso, manager, was responsible for all aspects of manufacturing at Louisville including costs and personnel. The immediate implementation of company policy was in his hands. Torasso determined to reorganize the Louisville Division, reduced in scope by elimination of the Fairlawn plant, by consolidating the functions of purchasing agent with those of traffic manager. This and other economies would, he hoped, result in a reduction of salaried personnel at Louisville from 15 to 9. Torasso also evaluated all of the existing personnel with a view to retaining those best qualified to fit into the new organization.

The evaluation of Thor Laugesen, as set forth in the Separation Notice at the time he was discharged on October 29, 1971, forms the principal basis for his claim that he was discharged on account of his age, and hence illegally under the Act.

The Separation Notice form contained evaluations covering seven personal characteristics and included ratings from "excellent" to "poor." Torasso scored Laugesen "good" in reliability and conduct, and "fair" in terms of quality of work, quantity of work, initiative, attendance and punctuality. Under a sec-

tion of the report marked "primary cause of separation and additional comments" Torasso listed the primary cause as "reduction in force" and thereafter noted "too many years in job. Became too close with vendors. Lacks personal strength."

The case was tried before a jury. In his case-in-chief, Laugesen himself testified and also called Torasso for cross-examination. He further introduced an extensive stipulation of facts, prepared jointly by counsel for the parties and covering many of the particulars of Laugesen's employment history, pay, and the Separation Notice.

Laugesen testified to his own opinion that he was discharged because of his age. He brought out that the combined job which was left after reorganization was filled by an employee who was at the time 39 years of age. He introduced evidence that the reduction in salaried personnel reporting directly to Torasso had the effect of lowering the average age, 43 to 37 years. The case which Laugesen made was essentially a circumstantial one. He was unable to offer or provide any evidence which directly indicated a policy or intention of using age as a factor in the process of selecting those employees who would be terminated and those who would remain.

## I. Application of McDonnell Douglas v. Green

Laugesen makes two claims of error in which he relies principally upon McDonnell Douglas v. Green, *supra.* These relate to the trial court's denial of his motion for directed verdict and to its jury instructions on burden of proof.

We note at the outset that *McDonnell Douglas* addresses itself to " . . . the proper order and nature of proof in actions under Title VII of the Civil Rights Act of 1964, 78 Stat. 253." 411 U.S. at 793, 93 S.Ct. at 1820. We are not, of course, dealing here with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., but with an entirely separate legislative enactment of the Congress.[1] The similarity, however, between Title VII and the Age Discrimination in Employment Act is hardly accidental. As observed by Judge Tuttle in Hodgson v. First Federal Savings and Loan Association, 455 F.2d 818, 820 (5 Cir. 1972), "With a few minor exceptions the prohibitions of this enactment are in terms identical to those of Title VII of the Civil Rights Act of 1964 except that 'age' has been substituted for 'race, color, religion, sex, or national origin'."

*McDonnell Douglas,* a non-jury case, involved an allegation of racial discrimination in the failure to rehire. Justice Powell, writing for the majority, held that the plaintiff bears the initial burden to establish a prima facie case, a burden met in that case by a showing that (1) plaintiff belonged to a racial minority, (2) that he applied and was qualified for a job for which the employer was seeking applicants, (3) that despite his qualifications he was rejected, and (4) that, after his rejection the position remained open and the employer continued to seek applications from persons with complainant's qualifications. The Court held that after such a prima facie case had been made out, the burden shifted to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824. Where the employer has done so, the Court held, he has "discharged his burden of proof at this stage" and met the employee's prima facie case of discrimination. However, the Court held that "the inquiry must not end here." The employee, at that point, must be "afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext." 411 U.S. at 804, 93 S.Ct. at 1825.

Laugesen claims first that the trial court erred in denying his motion for a directed verdict, asserting that he made out a prima facie case of discrimination under McDonnell Douglas v. Green, which shifted the burden to Ana-

---

1. 29 U.S.C. § 621 et seq.

conda to prove non-discrimination, a burden which he claims was not met here.

There is, of course, a difference between that state of facts which, if unrebutted, requires the court to direct a verdict and that which merely passes the threshold test of sufficiency, leaving to the jury the ultimate decision based upon its determination of the weight and credibility of the evidence. Laugesen's evidence was at best equivocal. We are convinced that it presented no more than a jury question. The burden was upon him to prove by a preponderance of the evidence that he was unlawfully discharged because of his age. Upon the record here, the question of whether he had met this burden was for the jury. Further, if it was incumbent upon Anaconda to "articulate some legitimate and nondiscriminatory reason" for the discharge, such evidence was in fact introduced by the showing that Laugesen received less favorable ratings than the employee who was retained.

The trial judge did not err in denying Laugesen's motion for directed verdict.

Laugesen next claims that if he was not entitled to a directed verdict on the basis of McDonnell Douglas v. Green, he was entitled at least to an instruction charging the jury that he had "made out

a prima facie case and the burden of proving non-discrimination shifted to the defendant."

■ (While it may not be unreasonable to assume that in a proper case the guidelines established in McDonnell Douglas v. Green can be applied in age discrimination jury cases, we believe it would be inappropriate simply to borrow and apply them automatically.)

In the first place, the Supreme Court in that case did not attempt to deal with the problems and procedures inherent in the submission of issues to a jury.[2] Further, in speaking for the majority, Justice Powell expressly recognized that "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." McDonnell Douglas, supra, n. 13 at p. 802, 93 S.Ct. at p. 1824.[3] We do not here decide whether Congress intended that actions under the Age Act must invariably be guided by the law applicable to Title VII cases. That the law is embodied in a separate act and has its own unique history at least counsel the examiner to consider the particular problems sought to be reached by the statute.[4]

---

**2.** We are not asked here to decide whether there is a right to a jury trial in cases brought under the Age Act. But see Chilton v. National Cash Register Company, 370 F.Supp. 660 (S.D.Ohio 1974), where it was held that there is a right to jury trial on issues of lost wages and benefits in Age Act cases. We note that trial by jury of civil rights cases under Title VII is uncommon, and has been discouraged. See King v. Laborer's International Union, 443 F.2d 273, 279 (6 Cir. 1973), and cases cited therein. See also Curtis v. Loether, 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), wherein the Supreme Court declined to rule on the question of right to jury trial under Title VII, while noting that several circuits have viewed back pay as essentially an equitable issue, thus not requiring trial by jury.

**3.** Other than the distinction between age and race, the most apparent difference between the factual circumstances here and those in McDonnell Douglas, is that Laugesen claims discrimination in discharge, whereas McDon-

nell Douglas dealt with an allegation of failure to hire.

**4.** See House Report No. 805, 1967 U.S.Code Cong. and Adm.News, p. 2213 et seq.

See also Section 2(b) of the Act, wherein Congress declares it to be the purpose of the Act "to promote employment of older persons based upon their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers to find ways of meeting problems arising from the impact of age on employment."

The House report recognized that in certain industries, such as the railroad industry, a disproportionately high number of older workers are found in the work force, and comments that: "The committee does not intend the legislation be administered in such a way as to worsen a situation as this, or to prevent an employer from achieving a reasonable age balance in his employment structure. It is expected that the Secretary will recognize these particular situations and treat them according to their individual merits on a case-by-case basis."

■ As we view the facts here, the burden was initially upon the plaintiff to prove his claim that he was discharged because of his age. Absent an admission by the defendant or a state of facts so clear that no reasonable person would disagree, the issue remained one for the jury and the burden of proof remained with the plaintiff. We note that the Separation Notice, claimed to be proof of discrimination here, was itself capable of more than one construction. The language, "too many years on the job" could have meant that the length of service itself, a factor inevitably related to age, was the basis for discharge regardless of performance, and hence would show discrimination. On the other hand if the language, read in context with other comments, meant that the plaintiff had become complacent, this could reflect considerations of merit and ability, rather than age. Viewed in this light, a dispute of fact was created by plaintiff's own proofs, and the burden did not shift.

Anaconda's defense was quite simply that it did not discriminate on account of age in discharging Laugesen. Put otherwise, the defense was simply a denial of the truth of plaintiff's allegation, supported by evidence that the reason for the discharge was a need to reduce personnel generally, together with proof that the selection of plaintiff for discharge was based upon the relative merits of two men for the one position which remained. This is not a case in which the defense admits the discrimination but seeks to justify it as a bona fide occupational qualification necessary to the normal operation of the business. That defense is specifically recognized in Section 7 of the Act and is an affirmative defense in Title VII cases, Roberts v. Union Co., 487 F.2d 387 (6th Cir. 1973); Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971).

■ Accordingly, we hold that the trial court did not err in its instructions pertaining to the burden of proof and that it properly declined to instruct the jury that the burden of proving non-discrimination had at any time shifted to the defendant.

## II. Other Instructions to the Jury

Anaconda asserts that Laugesen's claims of error in the jury instructions should not be considered because they were not preserved for appellate review by timely objection. F.R.Civ.P. 51. In Gradsky v. Sperry Rand Corporation, 489 F.2d 502 (6th Cir. 1973), we held:

■■ Rule 51, construed in light of Rule 46's discouragement of formality in procedures, does not require formal objections, but the Rule is satisfied only if it is clear that the judge was made aware of the possible error in or omission from the instructions. *E. g.* Sears v. Southern Pacific Co., 313 F.2d 498 (9th Cir. 1963). The purpose of the Rule is to inform the court of possible errors in the charge "to afford [the] trial judge opportunity to correct

---

1967 U.S.Code Cong. and Adm.News, at pp. 2219–2220.

It is also evident from the Report, that Congress did not desire that the Act be applied formalistically:

"The case by case basis should serve as the underlying rule in the administration of the legislation. Too many different types of situations in employment occur for the strict application of general prohibitions and provisions."

The foregoing language suggests that perhaps the more strict approach which is evident in the treatment of a Title VII race discrimination case in McDonnell Douglas v. Green may not be desirable here. The progression of age is a universal human process.

In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex and national origin. Thus, while the principal thrust of the Age Act is to protect the older worker from victimization by arbitrary classification on account of age, we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age.

error in his charge before the case is finally submitted to the jury." Moore v. Stephens, 271 F.2d 119, 120 (6th Cir. 1959). The court, insofar as the instructions were covered by the appellant's proposals and objections to the appellee's proposals, was aware of the appellant's objections to the charge as given. To that extent, the requirements of Rule 51 have been met. However, assignments of error on points not included in the appellant's proposed instructions nor covered in his objections to the appellee's proposals are not properly preserved for appeal. Gradsky v. Sperry Rand Corporation, *supra*, 489 F.2d at 503.

■ A careful examination of the record satisfies us that Laugesen's objections to the instructions were brought in timely fashion to the attention of the trial judge, and were thus properly preserved for our review. *Gradsky, supra.*

Four specific objections are made to the jury instructions in addition to the issue previously discussed. Only one do we conceive to be meritorious.

■■ First, Laugesen claims that the court erred in refusing to instruct the jury upon two distinct theories of recovery: the first, a claim of unlawful discharge, and the second, a claim of unlawful failure to rehire. Laugesen's complaint is couched solely in terms of charges of wrongful termination. Only one event was proved, the termination itself. While it is true that the termination report issued by Anaconda indicates that Laugesen was determined to be "ineligible for rehire," this simple statement on the report is not enough to warrant an instruction where the claim was never pleaded. Further, there was never any proof that Laugesen, after his discharge, made an effort to be rehired, nor for that matter, any claim or proof that Anaconda engaged in any rehiring practices. The trial judge was under no obligation to instruct as to a theory not pleaded and in support of which there was no evidence. Flentie v. American Community Stores Corporation, 389 F.2d 80 (8th Cir. 1968).

■ Second, Laugesen asserts that the trial court erred in failing to instruct the jury that "It did not have to find that Anaconda had acted with specific discriminatory intent in order to find for him." Plaintiff's reliance upon King v. International Union, 443 F.2d 273 (6th Cir. 1971) as support for the charge requested is misplaced. *King* does not hold that discriminatory intent is unessential, but rather that its presence may be inferred from a totality of the circumstances. *King, supra*, at 278. Here the trial court did not specifically instruct on intent, but rather used such terms as "because of his age" and "reasons" for his discharge. We think this was a permissible employment of language which conveyed the law to the jury in understandable terms. The trial court further instructed the jury that they could properly consider circumstantial evidence in considering their verdict. Thus, the judge's instructions substantially charged the jury in the manner desired by plaintiff without using the specific language requested. Plaintiff cannot complain because of the language difference. Tyree v. New York Central R.R., 382 F.2d 524 (6th Cir. 1967).

Third, Laugesen asserts that the trial judge erred in failing to "instruct the jury in accordance with the regulations promulgated by the Secretary of Labor." Counsel for Laugesen did not submit any written request to charge couched specifically in terms of any regulations, but rather sought to assert the right during the colloquy on instructions which preceded final arguments. Counsel requested that the court instruct the jury that all exceptions to the Age Act be construed narrowly and the burden of proving them placed upon the employer. Laugesen relies upon that language in the regulations appearing in 29 CFR § 860.103(e):

> "Further, in accord with a long chain of decisions of the Supreme Court of the United States with respect to other remedial labor legislation, all exceptions such as this must be construed narrowly, and the burden of proof in establishing the applicability of the ex-

ception will rest upon the employer, employment agency or labor union which seeks to invoke it."

■ A reading of the complete regulation, 860.103, places the cited subsection in its proper context. The regulation in question is aimed at policies of companies pertaining, for example, to physical fitness, educational requirements or the like, which are differentiations based on factors other than age, but which can in fact have a disparate impact upon older employees, thus imposing upon the employer the duty of showing job-relatedness. Cf. Griggs v. Duke Power, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The regulation is not intended to shift the burden of proving non-discrimination by the employer in a private single plaintiff age discrimination case where the defense is a selection based upon the relative personal performance characteristics of two employees competing for one job.

There is also no merit to Laugesen's claim that the trial court erred in failing to instruct the jury that discrimination was also prohibited within the protected age bracket, in accordance with Regulation 860.91. There was no claim here that discrimination did occur within such bracket. Moreover, the trial court nowhere indicated that it was permissible to discriminate within the protected bracket. The fair import of his instructions taken as a whole, *Tyree, supra*, was quite to the contrary, and thus was not inconsistent with the language of the regulation.

Finally, it is claimed that "in order for plaintiff Laugesen to have recovered under the instructions in the instant case, he would have been required to show that age was the *sole* reason for his layoff, by reason of the Court's charge that the Age Discrimination Act makes it unlawful to discharge any individual between the ages of 40 and 65 from his 'employment *merely* because of his age.'" In addition to objecting to this specific language, Laugesen objected to the failure of the court to instruct the jury that he could recover if the jury was to find that "age was a 'factor' or a 'determining factor' or a 'substantial factor' in selecting plaintiff for discharge." [5]

■ We recognize that in evaluating the adequacy of a charge to the jury, it must be taken as a whole. Tyree v. New York Central R.R., *supra*. If the judge's instructions properly present the issues and the law as applicable, it is no ground for complaint that certain portions, taken by themselves and isolated, may appear to be ambiguous, incomplete or otherwise subject to criticism. Gradsky v. Sperry Rand, *supra*. Thus, the use of the term "merely" is of little consequence unless, construed with the instructions as a whole, it misleads the jury to the prejudice of the plaintiff. Accordingly, we are led to an examination of the entire instructions given.[6]

**5.** Plaintiff requested the court to instruct that:
"If the jury believes from the evidence that age was a factor in the selection of plaintiff Laugesen for assignment to permanent layoff, then the law is for the plaintiff and your verdict shall be for him."
Laugesen also requested that the court give the following instruction:
"But if the jury believes from the evidence that plaintiff's age was not a substantial factor used by defendants in selecting plaintiff for discharge, or for rehire, then your verdict should be for defendant."
An amendment later filed to that instruction substituted the term "determining factor" for the term "substantial factor" used earlier.

**6.** The charge to the jury regarding liability was as follows:

"Now as you have heard from the statements of counsel, from the arguments, and evidence in this action, the plaintiff, Thor Laugesen, has brought a suit against his former employer on the grounds that he was terminated and declared not eligible for rehire because of his age. He bases his suit on the Age Discrimination Act of 1967, which Congress enacted to prohibit arbitrary age discrimination in employment and to promote the employment of older persons on the basis of their ability. As part of this Act, it is provided, quote, it shall be unlawful for an employer to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or provisions of employment because of such individual's age. The Act

In formulating his instructions to the jury, the trial judge was without the benefit of any published opinions in this or other circuits which might shed light on proper instructions to a jury in Age Act cases. The record reflects extensive and careful consideration of the problem both by the court and by counsel for the parties.

The general need of Anaconda to reduce its personnel at Louisville because of unfavorable economic conditions was largely conceded by Laugesen. It was not the general reduction, but rather the selection of Laugesen for discharge as opposed to someone else which formed the crucial issue in his claim that he was discharged because of his age. Since it was obvious that economic conditions had to play an important part in the decision, it was vital for the jury to know that this alone would not dispose of the case if Laugesen's age induced Anaconda to discharge him instead of someone else.

The concept of causal relationship is variously expressed. In the law of torts, it is frequently said that there can be more than one proximate cause. In King v. Laborers International Union, *supra*, a Title VII case, this court speaking of the right of the jury to award damages in the form of lost compensation, stated:

"But where it can be shown that discrimination on the basis of race, color, religion, sex or national origin was, in part, a causal factor in a discharge or refusal to hire the aggrieved party, the aggrieved party is statutorily entitled to damages of lost compensation." King v. International Laborers Union, *supra*, 443 F.2d at 279.

The Secretary of Labor, in the regulations interpreting the Age Act speaks in terms of insuring that age "is not a determining factor" in a decision to discharge. 29 CFR § 860.103(c).

Anaconda claims in its brief that the instructions given properly apprised the jury in this regard:

"In essence, if the jury believed that age played any part or had any connection with the decision to terminate Laugesen, it could have found for him under those instructions. On the other hand, under the District Court's instructions, the jury could only find for Anaconda if it determined that his termination was for bona fide business reasons unconnected with age and in which age was not a factor. The fair inference of these instructions is that if the jury believed that age played any part in the decision to terminate Laugesen, it should find for him."

If the instructions given by the trial judge had, in fact, conveyed the ideas

further provides, quote, the prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 65 years of age.

"Thus specifically, the Age Discrimination Act of 1967 makes it unlawful to discharge any individual between the ages of 40 and 65 from his employment merely because of his age.

"Now not every discharge of a person between the ages of 40 and 65 is unlawful under this Act. The Act provides in part, quote, it shall not be unlawful for an employer to discharge an older employee within this age bracket among certain conditions. One of them is where the differentiation is based on reasonable factors other than age.

"Now if the termination of the plaintiff is for bona fide business or economic reasons in which age is not a factor, there can be

no violation of the law, and the discharge would be lawful.

"The plaintiff in this action has the burden of showing by a preponderance of the proof—of the evidence that he was discharged from his job because of his age. As you know, it is contended by the defendant in this case that the discharge is for bona fide and business reasons unconnected with age.

"Now if you find that the termination was for the reason asserted by the defendant, that would be the end of your investigation; and you should cease your deliberations and return a verdict for the defendant in the case.

"On the other hand, if you find by preponderance of the evidence that the plaintiff was discharged because of his age and in violation of the statute which I have read you, then you should give consideration to the damages."

attributed to them by Anaconda, there would have been no error. While the instructions make it manifestly clear that the jury should find for the defendant if termination "is for bona fide business or economic reasons in which age is not a factor," the converse is not stated. Rather the instructions concerning the right of plaintiff to recover state that it is unlawful to discharge an individual "merely because of his age," and that he has the burden of showing by a preponderance of the evidence "that he was discharged from his job because of his age" without making it clear that it need not have been the sole or exclusive cause.

[11] However expressed, we believe it was essential for the jury to understand from the instructions that there could be more than one factor in the decision to discharge him and that he was nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged. This is so even though the need to reduce the employee force generally was also a strong, and perhaps even more compelling reason. It is because the instructions did not convey this necessary concept of the law to the jury that we are compelled to reverse and remand for a new trial.

### III.  Other Assigned Errors

#### 1.  Statistical evidence.

■ Plaintiff alleges that the trial court erroneously admitted into evidence certain bar graphs showing the practices of Anaconda respecting the retention and termination of employees by age. His argument is that in a private civil action for individual discrimination rather than a class action, evidence of a general pattern of age discrimination or the absence of it is immaterial. We do not agree. McDonnell Douglas v. Green, *supra*, itself a wholly private action, specifically approves the use of such statistics.

The plaintiff's arguments go mostly to the weight to be accorded them, an issue for the jury.

#### 2.  Damages.

The issue of damages was not submitted to the jury, but was, with the approval of counsel, decided in advance by the trial court.[7] While Laugesen agreed to this method of disposition of the damage issue, he objected at the time of trial to the amount of damages found by the trial court. Since the case is to be re-tried, the questions raised are properly before us for review.

■ Laugesen claims that it was error for the district court to have offset his lost wages by the amount he received as severance pay, claiming that this amount represents payment for past services. We hold that it was proper to set-off severance pay, if such amount represents payment occasioned by termination, which would not have otherwise been received by Laugesen had he not been terminated. While severance pay may be measured by length of past service, we view it as a payment occasioned by an involuntary termination. As such, it is an amount Laugesen would not have received but for the termination. If he is to recover and be returned to his original position, this amount should be deducted from his lost wages. See Shultz v. Hickok Mfg. Co., 358 F.Supp. 1208 (N.D.Ga.1973). We note that this amount is not claimed to be vacation pay, which has been held to be an amount earned and not occasioned by termination. Cf. Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231 (N.D.Ga. 1971).

■ Laugesen also claims that it was error for the district court to have offset the amount he received for teaching and lecturing between the time of his discharge and the trial. Any remuneration that Laugesen received following his discharge should be set off from the damages only to the extent that it actu-

---

7.  We are not asked to decide what relief was proper for the jury to determine and what was for the judge.

ally mitigated his losses. If Laugesen had received such sums during his employment at Anaconda, and could have been expected to continue to receive them, a set-off should be allowed only to the extent that the amount actually received exceeded that which Laugesen would have received had he been employed at Anaconda during the period in question. Only that amount may be set off as mitigation of damages.

Reversed and remanded for a new trial.