R. William BENTLEY,
Plaintiff-Appellant,

v.

STROMBERG-CARLSON
CORPORATION,
Defendant-Appellee.

No. 80-7285.

United States Court of Appeals,
Second Circuit.

Argued Nov. 6, 1980.

Decided Jan. 8, 1981.

Thomas G. Dignan, Rochester, N.Y. (Goldstein, Goldman, Kessler & Underberg, Rochester, N.Y., Jerrold B. Reilly, Rochester, N.Y., of counsel), for plaintiff-appellant.

Susan W. Allport, Rochester, N.Y. (Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., Robb M. Jones, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, LUMBARD and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

R. William Bentley appeals from a judgment entered on a jury verdict in the District Court for the Western District of New York for Bentley's former employer, Stromberg-Carlson Corporation (Stromberg), after a trial of his claim that he was illegally discharged in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634. We agree with Bentley that the trial judge did not properly charge the jury. Accordingly, we reverse the judgment and remand for further proceedings.

There was substantial evidence to support Bentley's claim that his discharge was age-discriminatory. He was hired by Stromberg in November 1956 when he was 33 years old and was assigned to the Engineering Department as an engineer at a salary of $143.20 per week. The Engineering Department later became the Product Design Department where Bentley worked until the final few months of his 19-year employment. In 1962, Bentley was promoted to the position of Senior Engineer.

Bentley received at least one salary increase almost every year. The last increase occurred in July 1974, when his weekly salary was raised from $351.94 to $378.84. During his employment at Stromberg, six patents were issued which named Bentley as co-inventor. These patents were assigned to Stromberg, and in each case Bentley received a letter of commendation from Stromberg's president, praising his "technical competence and proficiency" and his "splendid effort." Stromberg's regard for Bentley's talents was also shown by the fact that Stromberg sent him on a number of assignments: a trip to Denver in connection with the design of missile silo communications gear, a trip to California in connection with the development of earthquake-proof electronic equipment mounting apparatus, and a trip to West Germany to study the technology of electronic switching apparatus. All of Stromberg's evaluation reports, except the last which was dated a few months before his dismissal, rate Bentley's performance at least "above average" and some were "excellent" and "outstanding."

In 1975, Stromberg embarked upon a program involving a reorganization of its departments, a large reduction in force in its Rochester facilities, and a transfer of many operations to plants in the South. Ostensibly in furtherance of this program, Bentley was transferred from the Product Design Department to the Components Engineering Department in January of 1975. On February 24, 1975, Bentley was shown his 1974–75 evaluation report; it gave him an overall performance rating of "above average." In April 1975, however, Bentley was notified by Wayne Close, his acting supervisor, that the 1974–75 rating had been downgraded on review from "above average" to "fully satisfactory." Close informed Bentley that Edward Gegner, who was in charge of the Product Design Department, had downgraded the evaluation. Bentley went to see Gegner and registered his dissatisfaction with the downgraded rating and the manner in which the downgrading was done. Gegner himself had signed Bentley's 1974 performance evaluation report, which had rated him "above average." Bentley also testified that Gegner had never criticized his work at all while he was Bentley's manager.

In May 1975, Paul Kavanaugh, the manager of the Component Engineering Section, into which Bentley had recently been transferred, met with Jack Sherman, head of the integrated circuit facility. At that meeting, Gegner was asked to comment on Bentley's performance. According to Kavanaugh, he decided, after the meeting and based in part on what Gegner said, to lay off Bentley and two other engineers in his Components Engineering group.

On July 24, 1975, Bentley was summoned to see Kavanaugh, who told him he was to be terminated the next day. Bentley testified that Kavanaugh told him that "they were trying to upgrade the company image." Bentley also testified that after his firing he spoke to Bob Panzer, who was Stromberg's director of technical schooling and training programs. Panzer handed him a slip of paper bearing the words "equal rights" and told him he should file an age discrimination claim.

To rebut Bentley's prima facie showing that his discharge was age-discriminatory, Stromberg produced evidence which was sufficient, if credited by the jury, to support its defense that the charge was based upon considerations other than Bentley's age. It was undisputed that a reduction in Stromberg's force was under way at the time of Bentley's dismissal and that the technology in the industry was in a state of transition. Stromberg's witnesses testified that Bentley was discharged because of his lack of knowledge and technical skills required for the development of new electronic products and that his age played no part in the decision to terminate his services.

Thus, the jury was presented with the difficult question of the extent to which, if any, Bentley's age was a factor in his discharge. On such a record, it was imperative that any comment on the evidence by the judge in his charge to the jury be scrupulously fair and objective. Instead, the trial judge's charge started off by recit-

ing the defendant's case in detail. The judge's recital, which covers over eight pages of the record, consisted of an almost verbatim reading of Stromberg's trial brief. The judge's charge stressed the difficulties of the company in laying off employees. It also emphasized that the company saved Bentley from lay-off early in 1975. It even referred to difficulties the company had after Bentley's dismissal. In short, it gave all the arguments for the defendant, even to pointing out in detail and dollars how Bentley had done financially since he left Stromberg.

Having stressed the defense's contentions at great length, the judge then pointed out that it is not "unlawful for an employer to discharge an older employee for a reason other than age," adding "[i]f the plaintiff was laid off for a bona fide business or economic reason in which age was not a factor . . . the lay-off would be lawful." At this point, with no recital of any of the plaintiff's contentions, the court put to the jury the question it was to decide first: "Was age a determining factor in Stromberg-Carlson's lay-off of the plaintiff?"

■ The judge thus made no reference to the plaintiff's evidence regarding his extensive and meritorious record and his talks with superiors preceding his discharge, referred to above, from which the jury could infer that his age had indeed been a determining factor in his discharge. The trial judge made no effort to balance his lengthy statement of the defense evidence and the defense contentions with any comparable statement of the substantial evidence adduced by the plaintiff and his arguments for recovery. Nor was the jury told that the ultimate responsibility for finding the facts lay in their hands. In sum, what the trial judge said to the jury was tantamount to directing a verdict for Stromberg. A verdict rendered under such instructions cannot stand. *See, e. g., Quercia v. United States*, 289 U.S. 466, 469–70, 53 S.Ct. 698, 699–70, 77 L.Ed. 1321 (1933); *Kornicki v. Calmar Steamship Corp.*, 460 F.2d 1134, 1137 (3d Cir. 1972); *Myers v. George*, 271 F.2d 168, 172–74 (8th Cir. 1959) (biased remarks during trial).

■ Bentley also complains of the charge regarding the necessary elements of an age-discriminatory layoff. Bentley made timely request in writing that the court charge the jury that if they found that one of the factors affecting Bentley's discharge was his age and that it made a difference in determining whether he was to be retained or discharged, then they might find for the plaintiff even though the need to reduce the force generally was also a strong, and perhaps even a more compelling reason. This request followed closely the charge suggested in *Laugesen v. Anaconda Company*, 510 F.2d 307 (6th Cir. 1975).

The court refused to charge as requested and instead submitted to the jury the simple question: "Was age a determining factor in Stromberg-Carlson's layoff of the plaintiff, R. William Bentley?" There was no explanation of the term "determining factor." We agree with Bentley that it was error for the court to refuse to instruct the jury substantially as Bentley had requested and to substitute an inadequate and misleading charge. As the Sixth Circuit stated in *Laugesen* :

> "However expressed, we believe it was essential for the jury to understand from the instructions that there could be more than one factor in the decision to discharge him and that he was nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged. This is so even though the need to reduce the employee force generally was also a strong, and perhaps even more compelling reason."

510 F.2d at 317.

This Circuit has recently approved the "factor that made a difference" instruction suggested in *Laugesen*. *Geller v. Markham*, 635 F.2d 1027, 1035 (2d Cir. 1980). Although we stated in *Geller* that we saw no significant difference between the *Laugesen* formulation and the "determining factor" charge enunciated in *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 (1st Cir. 1975), we did not mean to suggest approval

of an instruction that stated only that the jury must find age to be a "determining factor" without clarifying that term. Instead, the *Loeb* charge considered in *Geller* is that a plaintiff must prove that age was a "determining factor in his discharge in the sense that 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Loeb v. Textron, Inc.*, 600 F.2d at 1019.

■ Finally, the district judge also committed error by requiring both parties to state their objections to the charge in the presence of the jury. Fed.R.Civ.Proc. 51. The purpose of Rule 51 is to allow counsel to state freely objections to the charge and not require counsel to do so under circumstances which would have an obvious chilling effect on advocacy. For the same reason, there was no necessity for counsel to object at the time to the court's failure to abide by Rule 51.[1]

Because of the errors in marshalling the evidence in a biased manner, in refusing to give a proper jury charge on the issue of age discrimination, and in requiring counsel to state objections to the jury charge in the presence of the jury, a new trial is necessary.[2]

Reversed and remanded for further proceedings.

---

1. *See, e. g., Swain v. Boeing Airplane Company,* 337 F.2d 940, 943 (2d Cir. 1964), *cert. denied,* 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed.2d 969 (1965).

2. On appeal, Stromberg argues that the errors should be overlooked since it was entitled to a directed verdict in its favor. In support, Stromberg cites *Sahadi v. Reynolds Chemical,* —— F.2d —— (6th Cir. 1980), in which a trial court's directed verdict against an age discrimi-

nation plaintiff was affirmed. We find *Sahadi* distinguishable, however, because in this case abundant evidence was brought forward by Bentley to allow the claim to go to the jury. In *Sahadi,* the plaintiff demonstrated only that he had been replaced by younger employees. Here, there was also evidence of remarks by company officials at the time of the layoff which might have supported a finding of age-discriminatory motive.