857 F.2d 1474
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald MILLS, Plaintiff-Appellant,
v.
SHELL OIL COMPANY, Defendant-Appellee.
 No. 87-1582.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1988.
 
 Before ENGEL, Chief Judge, MILBURN, Circuit Judge, and DAVID D. DOWD,* District Judge.
 ENGEL, Chief Judge.
 
 
 1
 This appeal presents us with the question of whether the district court abused its discretion in granting defendant's motion for directed verdict as to plaintiff's implied contract cause of action based upon Toussaint v. Blue Cross and Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980). We are further charged with determining whether the court erred in granting defendant's motion for judgment notwithstanding the verdict on plaintiff's age discrimination claim, brought pursuant to Michigan's discrimination statute, the Elliot-Larsen Civil Rights Act. M.C.L. 37.2202. We conclude that the trial court committed no error and accordingly affirm the decisions below.
 
 
 2
 Gerald Mills began work for Shell as a service station attendant in 1960. He was eventually promoted to the position of Territory Sales Representative (TSR) and was responsible for the sale of Shell gasoline and other products to individual Shell service station owners. In July of 1984, Mills was informed by George Hadley, his district manager, that Shell was going to consolidate its Michigan sales districts, thus eliminating the need for several TSR positions. Hadley informed Mills that his job would be eliminated and offered Mills an opportunity to participate in Shell's Special Staff Redundancy Program, an expanded form of severance pay. Mills refused.
 
 
 3
 Mills continued to work as a TSR until April, 1985. At that time, he was demoted to the position of station manager of a Shell station in downtown Detroit. He worked at that job for two weeks before taking disability leave. He never returned to his job. When he left his position with Shell, he was 46 years old.
 
 
 4
 Mills commenced this action on August 1, 1985 in the Circuit Court for Wayne County, Michigan. He alleged a violation of an implied employment contract, arising out of Shell's failure to honor a promise of fair treatment contained in the Shell policy manual. He further alleged that he was demoted as a result of age discrimination. Shell removed the case to the United States District Court for the Eastern District of Michigan on August 20, 1985, based upon diversity of citizenship.
 
 
 5
 A jury trial was held on Mills' claims over a five day period beginning on February 25, 1987. At the conclusion of Mills' case, the district judge agreed to grant Shell's motion for a directed verdict on the implied contract claim, but refused to do so for Mills' age discrimination claim. The case was submitted to the jury on the discrimination claim and that jury returned a $100,000 verdict for Mills on March 3, 1987.
 
 
 6
 Shell filed a motion for judgment notwithstanding the verdict on March 13, 1987. The court granted this motion on May 7, 1987. The court found that Mills' evidence of age discrimination was insufficient to support the jury's verdict.
 
 
 7
 On appeal, Mills claims that the court erred in its decision to grant a directed verdict, as there was sufficient evidence of age discrimination to submit that claim to a jury. He also claims that the district court erred in granting the JNOV, as there was sufficient evidence of an implied employment contract.
 
 
 8
 Our court has consistently held that in a diversity case, a federal court's standard for deciding a motion for directed verdict or judgment notwithstanding the verdict is provided by state law. See, e.g., Dabrowski v. Warner-Lambert Co., 815 F.2d 1076, 1078 (6th Cir.1987); Rhea v. Massey-Ferguson Inc., 767 F.2d 266, 269 (6th Cir.1985); Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984).
 
 
 9
 Michigan law provides that a court "is limited on review to the question of whether the party opposing the motion offered evidence about which reasonable minds could differ." Perry v. Hazel Park Harness Raceway, 123 Mich.App. 542, 549, 332 N.W.2d 601, 604 (1983). See also, Snider v. Bob Thibideau Ford, Inc., 42 Mich.App. 708, 712, 202 N.W.2d 727, 730 (1972), which holds that a court should grant such a motion when, construing all the relevant facts in favor of the non-moving party, "all reasonable men would agree that there has been an essential failure of proof."
 
 I. Age Discrimination
 
 10
 Our court has held that a plaintiff may raise a presumption of age discrimination by satisfying a variation of the four criteria of McDonnell Douglas v. Green, 411 U.S. 792 (1973), a race discrimination case. See, e.g., Simpson v. Midland Ross Corp., 823 F.2d 937, 940 (6th Cir.1987); Laugeson v. Anaconda Company, 510 F.2d 307, 312 (6th Cir.1975). Under the modified McDonnell Douglas standard, a plaintiff may establish a presumption if he demonstrates that:
 
 
 11
 (1) he was a member of a protected class (age 40 to 70);
 
 
 12
 (2) he was subjected to adverse employment action;
 
 
 13
 (3) he was qualified for the position;
 
 
 14
 (4) he was replaced by a younger person.
 
 Simpson, 823 F.2d at 940.[1]
 
 15
 Mills presented evidence on each of these issues. He was forty-six years old at the time of his demotion. He presented evidence indicating that he had previously received considerable praise for his work. Finally, he demonstrated that the three TSR's hired by Shell after his demotion were each younger than him. Thus, Mills was entitled to a rebuttable presumption of discrimination.
 
 
 16
 Once this presumption has been established, the burden of production shifts to the defendant employer, who must provide a legitimate nondiscriminatory reason for the actions he has taken with respect to the plaintiff. Id. at 940. Shell has met this burden by stating that Mills was demoted during a corporate reorganization of his division and also by stating that Mills' work received poor evaluations. See Laugesen, 510 F.2d at 312. Thus, Mills once more faces the burden of establishing that the reasons for discharge given by Shell are pretextual. Simpson, 823 F.2d at 940.
 
 
 17
 To meet this burden, Mills presented evidence that a discriminatory statement was made by one of his supervisors during one of his written evaluations of Mills. He further claims that statistical evidence supports the fact that his discharge was motivated by impermissible considerations of age.
 
 
 18
 Mills claims that a statement made by his sales manager, Ron Ravella, that "Mills has been with the company far too long" constituted evidence of age discrimination. However, Mills takes this statement out of context. The remark was made as part of a comprehensive evaluation of Mills' performance and was intended to demonstrate not discrimination regarding Mills' age, but dissatisfaction with his performance.[2]
 
 
 19
 Mills argues that Ravella's comment is, at the very least, ambiguous. He states that a reasonable juror could find the remark to be evidence of discrimination. To support his position he cites to a similar situation in Laugesen. When Laugesen was discharged, his notice of separation stated the primary reason for his discharge was "reduction in force." However, it stated in the additional comments section that he was also discharged because of "too many years in job. Became too close with vendors. Lacks personal strength." 510 F.2d at 311. Our court stated:
 
 
 20
 We note that the Separation Notice, claimed to be proof of discrimination here, was itself capable of more than one construction. The language, "too many years on the job" could have meant that the length of service itself, a factor inevitably related to age, was the basis for discharge regardless of performance, and hence would show discrimination. On the other hand if the language, read in context with other comments, meant that the plaintiff had become complacent, this could reflect considerations of merit and ability, rather than age. Viewed in this light, a dispute of fact as created by plaintiff's own proofs, and the burden did not shift.
 
 
 21
 Id. at 313.
 
 
 22
 While we reaffirm the validity of this holding in Laugesen, we do not find it applicable to the instant situation. In Laugesen, the allegedly discriminatory phrase stood alone, without any direct modification. Any contextual inferences that the remark was nondiscriminatory thus required a consideration of the entire section of Laugesen's separation notice. However, in the instant case, the nondiscriminatory content of the remark in question is much more apparent. The statement that "Jerry Mills has been with the company far too long, based on his ability and attitude shown today" does not leave any doubt as to why Ravella thinks Mills has been on the job too long. Thus, unlike the comment in Laugesen, it would be unreasonable to interpret Ravella's remark as discriminating on the basis of age. Since no reasonable juror could conclude that Ravella's remark was discriminatory, the remark does not help Mills meet his burden of establishing a pretextual discharge.[3]
 
 
 23
 Mills' statistical evidence similarly affords him little assistance. Mills points to the fact that he and Richard Truzzi, another TSR in the protected age class, were offered an opportunity to participate in Shell's Special Staff Redundancy Program, while Bob Henderson, the third TSR in their group, who was much younger, was not. Mills also claims that discrimination is established by the fact that he and Truzzi were demoted while Henderson was not. Finally, he notes that the three new TSR's hired in his territory since his resignation were each younger than him.
 
 
 24
 Both this court and the Michigan Supreme Court have stated that the fact that an employee was replaced by a younger employee is not sufficient evidence, in and of itself, to require a court to submit an age discrimination case to a jury. See, e.g., Dabrowski v. Warner-Lambert Co., 815 F.2d 1076 (6th Cir.1987); Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980); Matras v. Amoco Oil Co., 424 Mich. 675, 684, 385 N.W.2d 586, 590 (1986).
 
 
 25
 We find the remainder of Mills' evidence to be incomplete and unconvincing. It is true that Mills and Truzzi, but not Henderson, were offered the special severance pay program. However, the program was offered to eight Detroit area employees, ranging in age from twenty-six to fifty-seven. The average age of those offered severance pay was forty-five, while the age of those not asked to participate was forty-one. Particularly in light of the small size of the group, we cannot view this minor discrepancy in age as anything other than insignificant.
 
 
 26
 Further, while Mills and Truzzi, but not Henderson, were demoted in 1984, we find that the general pattern of dismissals, demotions and promotions occuring at this time does not display any evidence of age discrimination. Between the date of Mills' resignation and the date of trial, two TSR's younger than Mills were either demoted or terminated and a TSR older than Mills was promoted. More telling, however, is the fact that the average age of Shell's employees in the Michigan district between 1984 and 1986 remained forty-one years.
 
 
 27
 We recognize our duty to construe all facts and reasonable inferences in favor of Mills when considering Shell's motion for a JNOV. However, this does not mean that we must give credence to incomplete or misleading statistical evidence. In Simpson we stated that "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." 823 F.2d at 944 (quoting Segar v. Smith, 738 F.2d 1249, 1274 (D.C.Cir.1984). Our court has also noted the fact that statistical evidence must be complete and based on sound reasoning. See, e.g., Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir.1986); Wilkins v. Eaton Corp., 790 F.2d 515, 523 (6th Cir.1986).
 
 
 28
 Mills' statistics, by focusing on only himself, Truzzi and Henderson do not present the entire picture of employment decisions that were being made by Shell in Detroit in 1984. Our review of the evidence leads us to conclude that no reasonable juror could find the statistical evidence to demonstrate even the possibility of age discrimination. Given our conclusion that none of Mills' evidence raised any inference of discrimination, we have no difficulty in concluding that the district court's opinion, granting Shell's motion for a JNOV, should be affirmed.
 
 II. Implied Employment Contract
 
 29
 Mills' other argument is that an implied contract was created by his reliance on the provisions of Shell's employee manual. It is possible to base a Toussaint contract on statements made in such manuals. The Toussaint court itself stated that "[a]n employee's legitimate expectations grounded in an employer's written policy statements have been held to give rise to an enforceable contract."
 
 
 30
 Id. at 598, 292 N.W.2d at 884. However, in this case, no enforceable Toussaint promise can be drawn from the Shell manual.
 
 
 31
 Mills relies upon the following language from the Shell manual:
 
 
 32
 Honesty and fair dealing are essential to a successful employment relationship. Shell undertakes to be fair with you at all times. In return, Shell expects that you will devote yourself conscientiously to Company objectives during work periods and will refrain from activities or relationships that might conflict with those objectives.
 
 
 33
 Mills claims that this provision gave the jury the right to determine whether Shell's treatment of him was honest and fair. We disagree.
 
 
 34
 Our court considered a similar situation in Dabrowski v. Warner-Lambert Co., 815 F.2d 1076 (6th Cir.1987). In Dabrowski, we refused to recognize a Toussaint cause of action that would permit an employee to enforce a statement in his employer's policy manual providing that the most qualified candidate for a job position would be selected. In denying Dabrowski's claim, we stated:
 
 
 35
 It does not necessarily follow, however, that the "most qualified candidate" has a cause of action for breach of contract if he or she does not happen to be selected. For this court so to hold would push the Toussaint rationale far beyond the limits to which it has thus far been confined by the Michigan courts, and would permit recovery with only the most ephemeral showing of consideration or detrimental reliance--an element much more clearly present in Toussaint and other Michigan wrongful discharge cases.
 
 
 36
 Id. at 1081. As in Dabrowski, the policy statement in question in this case would, if enforced by this court, constitute an extreme expansion of the Toussaint doctrine. Mills has not presented and we have not discovered a single decision of a Michigan court that has enforced such broad and sweeping language from an employer's policy manual.[4] As we are governed by the law of Michigan in this diversity action, we have no choice but to refuse to allow recovery based upon the policy statements at issue in this case.
 
 
 37
 The judgment of the district court is thus in all respects AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The Simpson court pointed out that the McDonnell Douglas standard is not to be automatically applied to age discrimination cases. Instead, the court noted that this circuit has adopted a case-by-case approach. Id. at 940. Also, in Laugesen, we stated that "[w]hile it may not be unreasonable to assume that in a proper case the guidelines established in McDonnell Douglas v. Green can be applied in age discrimination jury cases, we believe it would be inappropriate simply to borrow and apply them automatically." 510 F.2d at 312. However, we do not need to reach this question in this case, as we find that even if Mills was entitled to a McDonnell Douglas presumption, he still failed to produce sufficient evidence to submit his case to the jury
 
 
 [2]
 Ravella stated in Mills' performance evaluation that:
 Jerry Mills can only participate and function in a comfortable environment that he creates for himself. He avoids confrontation at all cost, both with his superiors and dealers. He tends to operate in a glass bubble, protected from all unfriendly environment.
 I fell that even though some unfairnesses are pointed out in this performance assessment, it only touches the surface, and does not dig deep enough into the heart of the problem.
 Jerry Mills has been with the company far too long, based on his ability and attitude shown today. He will not be able to survive much longer with the limited scope of the job that he possesses.
 
 
 [3]
 The court in Laugesen also considered this question in a different factual context. The district court in Laugesen had sent the case to the jury, which had returned a verdict for Anaconda. Thus, the court was concerned with whether no reasonable juror could have found for Anaconda. It concluded that "Laugesen's evidence was at best equivocal." 510 F.2d at 312. The court never considered the possibility that the statement in question did not even raise a jury question because it was merely necessary for the court to find the statement to be ambiguous in order to decide the issue in question. This variation of context diminishes the importance of this part of the Laugesen holding to the instant case
 
 
 [4]
 We note that both federal courts and the courts of Michigan have occasionally used the Toussaint doctrine to enforce an employer's promise relating to certain concrete terms and conditions of employment. See, e.g., Ariganello v. Scott Paper Co., 588 F.Supp. 44 (E.D.Mich.1982); Cain v. Electric & Equipment Co., 346 Mich. 368, 78 N.W.2d 296 (1956) (severance pay); Pautka v. Michigan Alkali Co., 274 Mich. 318, 264 N.W. 385 (1936) (death benefits); Sepanske v. Bendix Corp., 147 Mich.App. 819, 384 N.W.2d 54 (1985) (leave policy); Damrow v. Thumb Coop Terminal, 126 Mich.App. 354, 337 N.W.2d 338 (1983) (discipline policies). However, all of these cases enforce specific promises to provide employees with particular benefits. It would constitute an even greater expansion of Toussaint to apply it to as subjective a promise as one of honesty and fair dealing