940 F.2d 659
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Johnny H. COOKSTON, and Edley Dempsey, Plaintiffs-Appellants,
v.
CAVALIER CORPORATION, Defendant-Appellee.
 No. 90-5844.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1991.
 
 Before MILBURN and BOGGS, Circuit Judges, and DeMASCIO,* District Judge.
 PER CURIAM.
 
 
 1
 Johnny H. Cookston and Edley Dempsey, former employees of defendant Cavalier Corporation ("Cavalier"), brought suit under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 626 et seq., and the Tennessee Human Rights Act, TENN.CODE ANN. Sec. 4-21-101 et seq., alleging that their lay-off in a labor force reduction was due to age discrimination. The jury returned a verdict in favor of the plaintiffs and awarded back and front pay in a combined total of $308,603. The district judge then granted defendant's motion for judgment non obstante veredicto, and for a new trial if the judgment n.o.v. were overturned. The court below held that plaintiffs had not established a prima facie case of age discrimination under the applicable standards. Plaintiffs argue on appeal that the district court 1) erred in granting judgment n.o.v., the evidence being sufficient to raise a jury question on their allegations of discrimination, and 2) abused its discretion in ordering a new trial, the jury's verdict being supported by the weight of the evidence. We affirm the judgment n.o.v., and for that reason, find it unnecessary to address the propriety of granting defendant's motion for a new trial.
 
 
 2
 * A trial court grants judgment n.o.v. as a matter of law, and its decision to do so is freely reviewable on appeal. Chappel v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986). The issue presented is whether there was sufficient evidence to raise a question of fact for the jury below. Ibid. In an employment discrimination case, the plaintiff has the burden of showing by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 252-53, 101 S.Ct. 1089, 1093 (1981). As a general rule, to do so the plaintiff must show that he is a member of a protected class, that he is qualified for a position, and that he was fired, demoted, not promoted, or otherwise subject to adverse treatment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1819 (1973). In age discrimination cases arising out of a work force reduction, the plaintiff's prima facie case must also include some direct, circumstantial, or statistical evidence in addition to the foregoing tending to indicate that the employer has singled him out for discharge for impermissible reasons. Barnes v. Gencorp, Inc., 896 F.2d 1457, 1464-65 (6th Cir.1990). The dispositive issue in this case is whether plaintiff has presented sufficient evidence under this standard. Since we are reviewing a judgment n.o.v., we view the evidence relevant to this question in the light most favorable to the plaintiffs, drawing from that evidence all reasonable inferences in their favor. Chappel, 803 F.2d at 265.
 
 
 3
 The record shows that when Cookston and Dempsey were laid off in March 1988, they had worked for Cavalier for 35 and 41 years respectively. Cavalier manufactured only one product, soda vending machines. At its peak in the early eighties, Cavalier employed 640 hourly employees and 140 salaried employees. During the eighties, Cavalier's sales declined. The company laid off its hourly employees, who were covered by a collective bargaining system providing for a seniority system. In June 1986, Cavalier began laying off salaried employees. In 1987, Cavalier went bankrupt, and its assets were purchased by Norman Sarkisian. He ordered the work force reduced to a skeleton crew. By June 1988, two months after plaintiffs' lay-off, the work force was down to one hourly employee and 34 to 36 salaried employees.
 
 
 4
 After Sarkisian ordered the reduction of the work force, Robert Niswonger was in charge of selecting salaried employees for discharge. In March of 1988, when plaintiffs were laid off, there were eight foremen in the stamping department, where plaintiffs worked. They included plaintiff Dempsey (age 59), plaintiff Cookston (age 57), Billy Barnes (age 49), Gerald McDonough (age 41), David Lockmiller (age 38), Benny Barnett (age 36), Ron Seymour (age 32), and Dennis Barber (age 31). Niswonger laid off Dempsey (59), Cookston (57), Barnes (49), Seymour (32), and Barber (31). He retained McDonough (41), Lockmiller (38), and Barnett (36).
 
 
 5
 Cavalier claims that Niswonger chose the most qualified foremen for retention and did not consider age. According to the defendant, Niswonger's inquiries into the performance of stamping department personnel indicated that Cookston had shown favoritism toward certain employees in the past and was in the habit of remaining in his office, rather than on the production floor, during most of his shift. Dempsey was considered good at operating the metal shearing machines, but not in other areas of the stamping department. Both were viewed as too inflexible to handle expanded duties required in a consolidated department.
 
 
 6
 As additional circumstantial evidence to meet their burden under Barnes v. Gencorp, plaintiffs offer 1) remarks made by certain Cavalier officials allegedly revealing a bias against older workers, 2) Cavalier's retention of younger and allegedly less qualified supervisors in the stamping department, 3) Cavalier's alleged violation of an established seniority policy in laying off the plaintiffs, and 4) an alleged attempt by Cavalier officials to force plaintiffs to resign.
 
 
 7
 Plaintiffs' strongest evidence lies in the statements allegedly revealing age bias. The following is a summary of the relevant evidence:
 
 
 8
 1. Cookston testified that at some unspecified, undated meeting several older foremen began to argue and Niswonger said "he would go out to the street and hire younger men in their place if they didn't shut up." On another occasion, when Cookston was going up some stairs and apparently having trouble keeping up with Niswonger, the later said that Cookston was getting old and having trouble keeping up.
 
 
 9
 2. Ed Guffy, who had been business agent for the Teamster local, testified that at various grievance meetings and contract negotiations over the years, W.O. Johnson, Cavalier's personnel manager, said that the company "wanted these older people off the job." Guffy also testified that in 1985-86 labor negotiations over the seniority system for hourly employees, Niswonger said that they "wanted to be able to get those old people off the job."
 
 
 10
 At one point during Guffy's testimony, the trial judge interrupted counsel to ask the witness what was meant by the term "older people." Guffy answered that Cavalier officials used the term to mean employees with more seniority, not chronologically older employees.
 
 
 11
 3. Former union steward Glen Atterton testified that in collective bargaining grievance meetings between 1985 and 1986, Niswonger had said, "Older people can't do the jobs. We're going to get rid of them."
 
 
 12
 The district judge properly determined that these statements were insufficient to establish a prima facie case of age discrimination by a preponderance of the evidence. According to the court, Niswonger's remarks about Cookston's age were too far removed from the context of an employment decision to be evidence of age discrimination. See Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir.1984) (cited in Chappel, supra, 803 F.2d at 268 n. 2). Plaintiffs place an unwarranted reliance on Laugessen v. Anaconda Co., 510 F.2d 307 (6th Cir.1975) to argue that the jury should have been permitted to infer a discriminatory animus from these remarks. In Laugessen, a notation that the plaintiff had been on the job too long appeared on his employment record. The Laugessen court held that it was for the jury to decide whether this remark was intended to be a reflection on plaintiff's job performance or an indication that plaintiff was considered too old for the job by his employers. Id. at 313. Laugessen is distinguishable from this case on the facts. In that case, there was no evidence establishing the context in which the notation was made, nor was there any direct evidence as to the intention of the person who made it. The jury was free to infer intention from the circumstances. In this case, the context of the allegedly discriminatory remark was a labor negotiation, not the decision to lay off workers in the force reduction. In addition, Guffy's testimony establishes that the term "older workers," as used by Johnson and Niswonger, referred only to workers with more seniority. In these circumstances, the jury would not have been free to infer a discriminatory intention from what Niswonger and Johnson allegedly said about "get[ting] those old people off the job."
 
 
 13
 Plaintiffs' second argument, that younger workers with less experience and qualifications were retained, while they were let go, also fails to establish age discrimination. In selecting workers for discharge, an employer is permitted to exercise its business judgment. See Chappel, 803 F.2d at 266 (in examining the credibility of an employer's reasons for laying off older workers, the trier of fact may not focus on the employer's business judgment). To show their qualifications, plaintiffs offered the statements of a number of Cavalier officials. For example, Robin Hitner, the assistant personnel manager, testified that Cookston was "a good and competent foreman," and Willie Bryant said that "Cookston and Dempsey [were] always good to him." By this evidence, plaintiffs hope to establish that the business reasons given for laying them off, e.g. their inflexibility, were pretextual. But in order to show this, plaintiffs must demonstrate that Cavalier's "business judgment was so ridden with errors that the defendant could not honestly have relied on it." Lieberman v. Gant, 630 F.2d 60, 65 (2d Cir.1980) (cited with approval in Langland v. Vanderbilt Univ., 589 F.Supp. 995, 1016 (M.D.Tenn.1984)). At most the testimony of plaintiff's witnesses establish that Cookston and Dempsey were qualified for their jobs, not that they were more qualified than those retained. This evidence falls far short of showing a judgment so riddled with errors that a reasonable trier of fact may determine that it is a pretext for unlawful discrimination.
 
 
 14
 Plaintiffs' third argument assumes that Cavalier had an informal seniority system for salaried employees and asserts that Cavalier violated it by laying off plaintiffs while retaining younger men. We must reject this argument for two reasons. First, the anti-age discrimination statutes do not require an employer to observe seniority in selecting workers for lay-off in a work force reduction. Barnes, 896 F.2d at 1469 ("This Circuit has clearly established that an employer has no duty [under the anti-age discrimination statute] to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is eliminated as part of a work force reduction."). Second, plaintiffs' evidence that there was an established, albeit informal seniority system is too slight to be relied on. Dempsey, a plaintiff, opined that there was an informal seniority system, because two of his younger assistants were laid off in 1986 and 1987 instead of him. Other than this self-serving conjecture, which is not evidence, Dempsey offered no proof that these men were selected for lay-off because of a seniority system. Bill Williams, the former president of Cavalier, testified that there was an informal seniority system and assured the court that the historical records would show that. However, on cross-examination, he was unable to mention a single instance in which lay-offs had been by seniority. On appeal, plaintiffs are similarly unable to provide an instance in which the policy was implemented. Instead, they argue as follows: "Suppose a company has a policy that any employee caught stealing gets fired, yet no employee has stolen so no employee is fired. Does the company have a policy? Certainly. The policy exists to be implemented in the proper situation." By an argument such as this one, it would be possible to prove the existence of almost any "informal" policy. Without more, we cannot conclude that plaintiffs have offered us any basis for holding that there is a legitimate question of fact as to the existence of an informal seniority policy.
 
 
 15
 Finally, plaintiffs argue that Cookston was pressured to resign and that the jury could infer age discrimination from this fact. The proof of this pressure is that Niswonger often said to him, "Cookston, ain't it about time for you to retire?" This statement has the same quality as the "age-biased statements" discussed above. It is too removed from the lay-off decision to be probative of a discriminatory intent.
 
 
 16
 We conclude that plaintiffs have failed to establish the prima facie case of age discrimination required by Barnes. Accordingly, the judgment below is AFFIRMED.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation